.HENRY W. AVERY, Admr.

*v.*

ELIZABETH M. MOORE.

*Filed at Ottawa May 14, 1890.*

1. PRACTICE—*special finding by jury—if not satisfactory—motion for new trial.* Where a party asks for a special finding of fact by the jury, and they return an answer to the question, if he thinks such finding is not supported by the evidence he should ask for a new trial, assigning such finding as a reason.

2. SAME—*papers going to the jury—on their retirement.* The fact that the jury, on the trial of a claim against an estate, on their retirement may take the claim with them, without the assent of the parties, is not such an irregularity, if one at all, as to work a reversal of the judgment. It will not be presumed, in the absence of a showing to that effect, that the party was prejudiced thereby.

3. EVIDENCE—*tending to prove the issue—admissibility.* There is no error in the admission of evidence objected to, which tends to prove the issues raised on the trial, and comes from competent sources. Its weight is for the jury.

4. ERROR WILL NOT ALWAYS REVERSE—*giving and refusing instructions.* A judgment will not be reversed merely for the reason that some of the instructions given are inaccurate, or even though some of those refused contain correct propositions of law, if it sufficiently appears, from special findings of fact by the jury, that the giving or refusing of such instructions had no influence on the verdict.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Boone county; the Hon CHARLES KELLUM, Judge, presiding.

Mr. J. C. GARVER, and Mr. WALES W. WOOD, for the appellant.

Mr. W. R. DODGE, Mr. R. W. WRIGHT, and Mr. N. C. WARREN, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This litigation grows out of the following claim: "The estate of George Gilson, deceased, to Elizabeth M. Moore, Dr.—To work, labor and services done and performed by the said Elizabeth M. Moore for the said George Gilson, in his lifetime, and at his special instance and request, for and during the time from October 26, 1881, to March 23, 1886, excepting and deducting from said period ten weeks of said time, and leaving the time of said service four years, two months and seventeen days, or 1537 days, at one dollar per day." The claim was filed in the county court of Boone county, and on the 5th day of December, 1887, by agreement of parties, transferred to the circuit court of that county. A trial by jury resulted in a judgment for claimant for $1537. On appeal, the Appellate Court for the Second District affirmed that judgment, and the administrator again appeals.

The claim is based upon the following alleged facts: George Gilson, deceased, was claimant's grandfather. After the death of his wife she kept house for him about two years, at his home in Belvidere, this State. After that she married, and, with her husband, went to Kansas, intending to make that her future home. Mr. Gilson was left without any one to keep house for him or see to his wants, his own children having all, long before that time, married and set up homes of their own. He was about eighty years of age, and in feeble health. About

August, 1881, he went to Kansas to see claimant, and, as she insists, by a promise to give her his Belvidere homestead, worth some $1500, induced her to agree to return to Illinois and keep house for and take care of him during the remainder of his life,—which agreement, she claims, she fully performed, except as prevented by Mr. Gilson and his daughter, who finally removed him from his house, and from her charge and care. She also claims that her said grandfather, in pursuance of said agreement, did execute a will, bequeathing to her said homestead property, but after being removed from her care, and shortly prior to his death, was induced to destroy the same, and by a deed and subsequent will disposed of all his estate, real and personal, giving her nothing.

There is no dispute as to the fact that appellee and her husband did return from Kansas about October 26, 1881, and from that date to March 28, 1886, resided in the homestead of the deceased with him. From that date to October 26, 1886, when he died, he was at the home and cared for by a daughter, who took him away from his own home, without claimant's consent. Claimant's theory of her case is, that having proved the contract, and performance on her part, so far as allowed to perform it, and deceased having failed to give her said homestead, she is entitled to recover from his estate what the services performed by her under the contract were reasonably worth.

Appellant denied the contract, and insisted that for any services performed by claimant for deceased she had been fully paid, by support furnished herself and family by deceased; that she failed to take care of him as long as he lived, and that he left his home of his own choice, because of her failure to take proper care of him; that if there was any agreement whatever on the part of deceased, it was with her and her husband jointly, and the husband had receipted for all services rendered for the time she claims for; that the living together of claimant and family and deceased was by an agreement that he should furnish the house, and claimant should keep the same and take

care of him ; that the inability of the deceased to take care of himself during most of the time charged for, was greatly exaggerated by claimant, and her charges therefore exorbitant.

All these defenses were submitted to the jury on the evidence *pro* and *con.* Included in these controverted questions of fact is the one as to whether or not the agreement was entered into in Kansas, as affirmed by claimant and denied by the admin-istrator, and it has been settled adversely to appellant.

The trial court, at the instance of appellant, submitted to the jury the question, "State, if you find an express contract, when and where it was made," and they answered, "Kansas, while deceased was there to procure claimant's services." Having asked for this special finding of fact, and the jury having returned an answer to the interrogatory, if appellant thought the finding was not supported by the evidence he should have applied for a new trial, assigning that as a reason. (2 Thompson on Trials, sec. 2701, n. 7.) This he did not do. There was, however, evidence tending to support the finding, and therefore the judgment of affirmance in the Appellate Court is conclusive ; also, the question as to whether claimant showed such facts as would excuse her from further perform-ance of that contract, and entitle her to recover on the *quantum meruit,* was controverted, and is now settled against the contention of appellant, unless he can show that there was some error of law in submitting that question to the jury.

It is contended that improper testimony was permitted to go to the jury on behalf of claimant, over objection of appellant. We have examined the different items of evidence falling within these objections, and are unable to see wherein appellant has been prejudiced in that regard. All the evidence admitted over objection tended to prove the issues raised on the trial, and came from competent sources. Its weight was for the jury. The fact that the jury took the written claim filed, into their jury room, when they retired to consider their verdict, without the consent of appellant, was not such an irregularity

as should be allowed to work a reversal of the judgment below, if it was an irregularity at all. It will not be presumed, in the absence of all showing to that effect, that appellant was prejudiced thereby.

It is also insisted, that the trial court erred in giving the second, third, fourth, fifth, sixth, seventh, tenth, eleventh and thirteenth instructions on behalf of appellee, and in refusing certain instructions asked by appellant.

At the request of appellant, the jury, in addition to the foregoing special finding, were required to and did answer the following questions :

"4. If you allow claimant, what rate per day?—A. One dollar."

"5. Who do you find furnished the provisions, coal and fuel for the family during the time?—A. John A. Moore."

"2. Was the contract express or implied?—A. Verbal, and an express contract."

Even if some of the instructions criticised were inaccurate, and even though some of those refused contained correct propositions of law, still the judgment below can not be reversed for that reason, if it sufficiently appears from these special findings of fact that the giving or refusing of such instructions had no influence upon the verdict. 2 Thompson on Trials, sec. 2699, and other authorities cited in note 8.

This rule would be a sufficient answer to the contention of counsel for appellant as to at least a part of the instructions objected to, but we do not deem it necessary to make a special application of it to this case, because we agree with the Appellate Court in the conclusion that the instructions, taken together, presented the law fully and fairly to the jury, and that the refused instructions were properly refused.

We are satisfied with the judgment of affirmance in the Appellate Court, and with the reasons for doing so stated in the opinion of UPTON, J.

                          *Judgment affirmed.*