## JAMES A. LEONARD v. THOMAS D. SCHALL.[1]

### April 24, 1914.

### Nos. 18,615—(40).

**New trial — document in jury room.**

1. Where at the close of a trial the attorneys for both parties, acting jointly, collected the exhibits for delivery to the jury, and both, supposing that

[1] Reported in 146 N. W. 1104.

a certain package contained exhibits only, permitted it to be given to the jury without examining its contents, although both had an opportunity to do so, the discovery after verdict that, unknown to either party, such package, in fact, contained a document not offered in evidence, will not justify granting a new trial, at least unless it be made to appear that such document improperly influenced the jury.

**Verdict sustained by evidence.**

2. An examination of the evidence shows that it is sufficient to sustain the verdict.

Action in the district court for Hennepin county to recover $3,-240.94 for professional services as attorney at law. The answer among other matters specifically denied that defendant ever agreed to pay plaintiff the sum of $50 per day for time spent out of his office and in court, and $25 per day for office services, and alleged an agreement that defendant should pay $25 for each full day for time spent by plaintiff in court, and pay $10 for each full day of time spent by plaintiff in defendant's business for office service, and that plaintiff performed services for defendant under such agreement. The case was tried before Hale, J., who at the close of plaintiff's case denied defendant's motion to dismiss the action, and a jury which returned a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Francis B. Hart,* for appellant.

*Freeman P. Lane, John Ott* and *Burdette C. Thayer,* for respondent.

TAYLOR, C.

Defendant is a practicing attorney. Having become blind, he employs other attorneys to appear in court for him and try his cases. He has quite an extensive practice in the line of personal injury litigation, and, for about a year, employed Francis B. Hart, another practicing attorney, to try his personal injury lawsuits. Mr. Hart tried a number of such suits and received various payments from time to time on account of his services; but a disagreement arising as to the amount of compensation to which he was entitled, the arrangement between them was terminated. Thereafter Mr. Hart assigned

his claim for the compensation due him to the plaintiff, and this suit was brought to recover an alleged unpaid balance thereof.

The complaint alleged an express contract to pay Hart $50 per day for court work and $25 per day for office work, and also alleged that the services rendered were reasonably worth those amounts. The answer admitted the employment, but alleged that the services were performed under an express contract whereby Hart was to receive $25 per day for court work and $10 per day for office work, and also alleged that he had been paid in full for all services rendered. At the opening of the trial, defendant moved that·plaintiff be required to elect whether he would proceed upon the theory of an express contract or upon *quantum meruit,* and plaintiff, apparently without waiting for a.ruling by the court, announced that he would rely upon *quantum meruit.* At the close of the trial the court instructed the jury to the effect that plaintiff, having elected to rely upon *quantum meruit,* could not recover in this action if defendant had established that the services in question were rendered under the special contract alleged by defendant. The jury were directed to determine whether such contract had been made, and, if they found that it had been made, to return a verdict for defendant. They were directed, in case they failed to find that such contract had been made, to determine the reasonable value of the services rendered, to deduct therefrom the amount of the payments made to Hart, and, if any balance remained, to return a verdict for plaintiff therefor. They returned a verdict· for defendant. Plaintiff made a motion for a new trial and appealed from an order denying it.

Plaintiff does not question the correctness of the instructions given the jury and concedes that they have become the law of the case. Neither does he question the correctness of any of the rulings made by the court during the trial. Only two questions are presented for decision. (1) Whether the evidence is sufficient to sustain the verdict; (2) whether a new trial should be granted for the reason that a certain memorandum which had not been offered in evidence was in the possession of the jury during their deliberations.

1. Two ultimate questions of fact were submitted to the jury for determination: First, whether the services were rendered under

the special contract asserted by defendant; second, if the services were not rendered under such special contract, whether the reasonable value thereof exceeded the amount already paid to Hart therefor. If the evidence justified the jury in finding either of these issues in favor of defendant, it is sufficient to sustain the verdict.

It is conceded that defendant and Mr. Hart met on March 23, 1911, and entered into the arrangement under which the services in controversy were performed. Plaintiff contends, and presented evidence tending to prove, that it was agreed at this interview that Hart should try certain cases then ready for trial before any definite contract should be made as to compensation or the performance of further services, in order that Hart might inform himself concerning the work which would be required of him and determine whether he would care to continue it, and that defendant might have an opportunity to judge whether his services were satisfactory and likely to continue so to be; that after the trial of these cases Hart insisted that his fees should be $50 per day for court work and $25 per day for office work; that defendant refused to agree to these fees; and that in fact no agreement was ever reached as to the compensation which Hart should receive.

On the other hand, defendant, in his testimony as to what occurred at the interview of March 23, 1911, states: "I told him at that time that I couldn't afford to pay more than $25 a day in court and $10 a day out of court. And he said, 'I never worked for so small a wage, but if you have several cases, I think that will be all right.' In fact, he agreed at that time to assist me in the trial of these cases, for $25 a day—$10 a day out of court and $25 a day in court, providing that there were several cases. I told him at that time that there was the Larson case, the Orr and Wilcox cases, the Ross case and the Lund case immediately coming on for trial. And that was satisfactory to him, and he said he would take them on." Referring to a conversation which took place after Hart had made a claim for $50 per day for court work and $25 per day for office work, defendant testified that he said to Hart: "You know that our contract is $25 a day in court and $10 a day out of court;" and testified that Hart replied that "he understood that, but that he hoped to make

better arrangements." On cross-examination, in answer to a question asked by Hart as to another conversation in which Hart's fees were discussed, defendant testified: "I told you that if you stayed with me you were to get $25 a day in court and $10 a day out of court, that that was the ultimatum; that, if you didn't want that, I could get plenty of lawyers * * * for that figure, and that I would have to get them." There was much more evidence both pro and con, but the above excerpts are sufficient to indicate that it was ample to sustain a finding by the jury that the services were rendered under a special contract. Which contention was correct was for the jury, not for this court, to determine; and as plaintiff voluntarily submitted the case to the jury upon the theory that they should return a verdict for defendant, if they found that the services had been performed under the contract alleged, the verdict cannot be vacated by this court on the ground that it is unsupported by the evidence.

2. There were a large number of exhibits used upon the trial. At the conclusion of the charge to the jury, Mr. Hart as attorney for plaintiff and Mr. Lane as attorney for defendant, acting jointly, gathered them together and they were taken to the jury room by the bailiff. The checks and drafts received in evidence had been placed in an envelope, and the attorneys, supposing that the envelope contained these checks and drafts and nothing else, placed it among the exhibits so sent to the jury room. When the verdict was rendered, the exhibits were returned to the court and remained in the custody of the clerk until examined in the presence of both attorneys at the time of preparing the record used upon the motion for a new trial. At this examination, it was discovered that the envelope containing the checks and drafts also contained a memorandum which had not been offered in evidence. According to the affidavits, this memorandum had not been used in connection with the trial, and none of the attorneys upon either side had any knowledge of its existence until its discovery as above stated. By whom it was prepared does not appear.

Had this document been surreptitiously sent to the jury at the instance of the prevailing party, we should not stop to weigh its effect, if it were of a character which might, in any degree, have influenced

their action. Akin v. Lake Superior Consolidated Iron Mines, 103 Minn. 204, 114 N. W. 654, 837. But no claim is made that defendant, or any of his representatives, had any knowledge that it was among the papers sent to the jury. This document is headed merely "Memorandum." Under this heading are a series of over 50 dates and amounts. In connection with these dates and amounts are noted various persons, officials, lawsuits, insurance companies, etc. Some of the items were involved in the present suit and referred to in the testimony, and some were not. The name of Mr. Hart appears in connection with eight of them. The items were not added together and the paper nowhere shows the total to which they amounted. Plaintiff contends that the jury may have considered the "memorandum" as containing a list of the payments claimed to have been made by defendant to or for Mr. Hart, and as it contained items not paid to him, and as the aggregate amount of all the items exceeds the aggregate amount of all payments made to him, that it may have been prejudicial to the cause of plaintiff. But the memorandum does not purport to be either a statement of account or a list of payments made to or for Hart. The most that can be claimed for it is that it contained a list of items, some of which pertained to matters in controversy between the parties and some of which did not. If the jury examined this memorandum, which perhaps we may assume in the absence of any evidence upon that point, it is difficult to see how it could have influenced them in any way. That it was given weight in determining the result is too improbable to justify a reversal in a case in which the party complaining permitted the package of papers containing it to go to the jury without examination.

There is some conflict in the affidavits as to the part the two attorneys took in collecting the exhibits for the jury. Mr. Lane claims that he merely placed the several documents upon a desk where Mr. Hart arranged them and placed those to be given the jury in a pile by themselves; while Mr. Hart claims that he arranged only a portion of the exhibits, and that the envelope in question was presented and placed with those to be given the jury by Mr. Lane. However this may be, there is no dispute over the fact that both attorneys knew that the envelope with its contents was to be given the jury; that

both had an opportunity to examine such contents; and that neither of them did so, for the reason that both assumed and believed that the envelope contained the checks and drafts and nothing else. Under such circumstances neither party is in a position to complain on the ground that the envelope contained documents not proper for the consideration of the jury. It was the duty of both to examine the different papers and see that only those papers proper for the jury to have were given to them. That the paper in question reached the jury is chargeable to plaintiff's failure to perform this duty, and will not justify a reversal, at least unless it be made to appear that the jury were improperly influenced by it. State v. Nichols, 29 Minn. 357, 13 N. W. 153; Maynard v. Fellows, 43 N. H. 255; Birmingham Ry. & Electric Co. v. Mason, 144 Ala. 387, 39 South 590, 6 Ann. Cas. 929; Clapp v. Clapp, 137 Mass. 183; Langworthy v. Connelly, 14 Neb. 340, 15 N. W. 737, 45 Am. Rep. 117; Admx. of Tracy v. Admr. of Card, 2 Oh. St. 431; Avery v. Moore, 133 Ill. 74, 24 N. E. 606; Southern Ry. Co. v. Coursey, 115 Ga. 602, 41 S. E. 1013; Ball v. Carley, 3 Ind. 577.

Order affirmed.