443 So.2d 962 (1983)
Linroy BOTTOSON, Appellant,
v.
STATE of Florida, Appellee.
No. 60708.
Supreme Court of Florida.
December 15, 1983.
Rehearing Denied February 7, 1984.
*963 A. Thomas Mihok of Dempsey & Slaughter, Orlando, for appellant.
Jim Smith, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
BOYD, Justice.
This cause is before the Court on appeal from a final judgment of conviction of murder in the first degree and a sentence of death. This Court has jurisdiction of the appeal under article V, section 3(b)(1) of the Florida Constitution.
Linroy Bottoson was convicted for the first-degree murder of Catherine Alexander, the postmistress at Eatonville, in Orange County. The victim was last seen alive leaving the post office at around noon on October 26, 1979, with a tall black man. As she was leaving, she whispered to two bystanders to call the police and tell them that the man was stealing. United States postal inspectors were called, and they discovered that some postal money orders were missing. They began to suspect appellant and his wife when they learned that appellant's wife had tried to cash one of the missing postal money orders at her bank that very afternoon. Appellant's residence was placed under surveillance Monday evening, October 29, as the postal inspectors applied to a United States magistrate for an arrest warrant. The magistrate granted the application but the actual preparation of the warrant was postponed until the following day because there was no one available to draft and type it. Upon learning of the granting of the application, several postal inspectors entered appellant's home around 10:30 p.m. and arrested appellant and his wife. The next day the postal inspectors searched appellant's home pursuant to a search warrant and found the missing money orders and the victim's shoes. In all the confusion the arrest warrant was never drafted and formally issued. The victim's body was found on the side of a dirt road the same night appellant was arrested.
At the trial three persons who were present at the abduction testified. Though none of them could identify appellant as *964 the man with whom the victim was seen leaving the post office, they all identified from a photograph the car in which she was taken away. It was later shown that the car was rented to appellant at the time of the abduction. A postal official identified the money orders found in appellant's home and could trace them to the machine at the Eatonville post office. There was also evidence of appellant's having deposited some of the stolen money orders in his bank account.
The medical examiner testified that the victim had been stabbed fourteen times in the back and once in the abdomen. He said that she died from crushing injuries to the chest and abdomen which were consistent with being run over by an automobile. There was expert testimony that hair samples and clothing impressions found on the undercarriage of appellant's car, a brown 1973 Chevelle, were consistent with having come from the victim's body and clothing. There was also expert evidence that clothing fibers similar to those in the victim's clothes and a tip of the victim's fingernail were found inside the car. Furthermore a dog handler testified that one of his dogs who was familiarized with the victim's scent found the victim's scent inside the car rented by appellant and underneath the length of the brown Chevelle owned by appellant. He also testified that another dog familiarized to appellant's scent indicated appellant's scent was present at the location where the victim's body was found.
Appellant's former wife, who was married to him at the time of the murder, testified that on October 26, appellant was away from home in the rented car at around noon. When he returned he gave her a postal money order which she deposited at the bank that afternoon. She testified that on the following Monday, October 29, she did not see appellant from 1:30 p.m. to 10:00 p.m. and that during that time he had the brown Chevelle.
A minister who visited appellant in jail testified that appellant admitted killing the victim. Also, during the trial the prosecuting attorney announced that the state had just learned from appellant's cellmate of some incriminating statements made by appellant. The cellmate was called as a witness and he testified that appellant admitted to killing Mrs. Alexander and that appellant had said "the best witness is a dead witness."
Appellant testified in his own defense. He claimed that on October 26, he loaned his rented car to a man named Ernest who gave him the postal money orders upon returning the car. He said that over the weekend he became suspicious of a connection between the money orders and the reported disappearance of the postmistress and went to see Ernest about it on Monday night. Appellant testified that Ernest admitted the money orders came from the Eatonville post office and then asked to borrow his car to give an elderly lady a ride home. Appellant said that he gave Ernest the keys to his brown Chevelle and that when Ernest returned Ernest admitted to having just killed Mrs. Alexander. Appellant said that he insisted on seeing for himself, so Ernest drove him out to the site of the murder where appellant got out of the car to look at the body.
The jury found appellant guilty of first-degree murder. In accordance with the jury's recommendation, the trial judge sentenced appellant to death.
In this appeal, appellant raises several points concerning the admissibility of the statements he made to the minister and the cellmate, the constitutionality of the search of his residence, the sufficiency of the evidence, the court's denial of his motions for additional counsel and to exhume the victim's body, the court's refusal to give a requested instruction, and the appropriateness of the death penalty. We resolve all of these issues against appellant and therefore affirm.
While awaiting trial appellant developed a friendship with another jail inmate named Pertrell Kuniara. According to Kuniara's testimony, appellant told Kuniara he killed the victim by stabbing her and running over her with a car because "dead witnesses are the best witnesses." *965 Kuniara relayed this information to the state attorney's office and was advised not to question appellant further about the case. Despite this admonition Kuniara continued to discuss appellant's case with him. Appellant now claims that Kuniara was acting as a governmental informant and that the evidentiary use of his statements to Kuniara violated his sixth amendment right to counsel, relying on United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). But as we have noted in Barfield v. State, 402 So.2d 377 (Fla. 1981), Henry does not apply to unsolicited statements made to a cellmate who is neither paid nor instructed by the government. In this case there was an insufficient connection between Kuniara and the state to establish that Kuniara was a government agent. Moreover, there is no proof that Kuniara actually solicited the incriminating statements from appellant. Therefore appellant's sixth amendment right to have counsel present during questioning did not come into play.
During their discussions, Kuniara suggested to appellant that he talk to Reverends Judge and Champion to enlist their support in negotiating a plea. Appellant requested that the two ministers visit him. When they arrived he handed them two written statements confessing to the murder and requesting leniency. They delivered these statements to the state attorney's office. Appellant now argues that these statements were inadmissible in evidence as either privileged communications or as statements made in connection with an offer to plead guilty. Appellant's second contention refutes his first. By his own admission he intended for these statements to be relayed to the state attorney's office. Since they were intended to be communicated to a third person, the statements were not confidential and were therefore not privileged communications. See § 90.505, Fla. Stat. (1981).
As for his second argument, we agree that any statement made in connection with a plea or an offer to plead is inadmissible. § 90.410, Fla. Stat. (1981). However, we do not believe that unsolicited, unilateral statements are under the aegis of this evidentiary statute. In construing the similarly worded Federal Rule of Criminal Procedure 11(e)(6), the federal courts have held that before excluding statements made during a plea negotiation a "trial court must apply a two-tiered analysis and determine, first, whether the accused exhibits an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances." United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir.1978) (en banc); see also United States v. O'Brien, 618 F.2d 1234 (7th Cir.), cert. denied, 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); United States v. Pantohan, 602 F.2d 855 (9th Cir.1979). In this case appellant's expectation that he was involved in a plea negotiation was not reasonable. The ministers were not agents for the state nor did they pretend to be. Appellant gave them his statements before there was any discussion as to the role they would play in helping him to obtain leniency. Thus we fail to find any error in the admission of these statements into evidence.
Appellant's third point on appeal is that the postal inspector's entry into his house without an arrest warrant violated his state constitutional right to be free from unreasonable seizure. He points out that subsequent to his arrest, the United States Supreme Court in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), held that a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest was unconstitutional. We do not find Payton to be applicable because this was not a routine felony arrest. As far as the officers knew the postmistress was still alive. Hence there was probable cause and exigent circumstances justifying the warrantless arrest of appellant within his home.
We have reviewed the entire record and find that there is more than enough evidence to support the jury's verdict. We *966 also find no merit in appellant's assertions that the trial court erred in denying his motions for additional counsel and to exhume the victim's body.
We now proceed to the sentencing phase of the trial. At the sentencing hearing the state called only one witness, an FBI agent who had investigated appellant for bank robbery in California. The agent identified an exhibit as papers relating to appellant's conviction. The state inadvertently neglected to offer the exhibit into evidence. After the jury had retired to deliberate, the prosecuting attorney brought to the court's attention that the exhibit had somehow been included with the materials given to the jury. The defense moved to have the penalty phase retried before a new jury. The judge ruled it was harmless error since he would have let the exhibit in if it had been offered into evidence.
We agree with appellant that it is error for the jury to be exposed to materials that have not been properly introduced into evidence. However, before a mistrial can be granted, it must be shown that the existence of an unauthorized object in the jury room has somehow prejudiced the defendant. E.g., State v. Turrentine, 122 Ariz. 39, 592 P.2d 1305 (Ct.App. 1979); Vaughn v. United States, 367 A.2d 1291 (D.C. 1977); State v. Gander, 220 Kan. 88, 551 P.2d 797 (1976); Brittle v. Commonwealth, 222 Va. 518, 281 S.E.2d 889 (1981); Johnson v. State, 75 Wis.2d 344, 249 N.W.2d 593 (1977). There is no prejudice where the information conveyed by the unauthorized materials merely duplicates evidence that had been properly presented to the jury at the trial. State v. Sumpter, 655 S.W.2d 726 (Mo. Ct. App. 1983); Edwards v. State, 637 P.2d 886 (Okl.Cr.App. 1983). In this case the unadmitted exhibit that was inadvertently allowed to go into the jury room merely reproduced the testimony of the FBI agent, which the jury had already heard. We therefore hold that the trial court did not abuse its discretion in denying the motion for mistrial.
Appellant argues that the trial court erred in not instructing the jury that it could recommend life imprisonment even if it found the existence of aggravating circumstances and no mitigating circumstances. Since appellant did not object to the instructions given, he has waived this objection. Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981).
Finally we hold that the trial judge properly imposed the death sentence. As aggravating circumstances, the trial judge found that appellant had previously been convicted of a crime involving the threat of violence; that the crime was committed during the commission of a felony; that it was committed for the purpose of avoiding arrest; and that it was especially heinous, atrocious, or cruel. He found no mitigating circumstances.
All of these aggravating circumstances were proven beyond a reasonable doubt. Appellant had previously been convicted of a bank robbery which inherently involves the use or threat of use of violence against another person. See Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980). Appellant concedes that the crime was committed during the commission of a robbery. That it was committed for the purpose of avoiding arrest was proven by appellant's own statement to Kuniara that "dead witnesses are the best witnesses." Finally that the victim was held captive for at least three days before being stabbed about fifteen times and then run over with a car renders this crime especially, heinous, atrocious, or cruel. These aggravating circumstances, considered in light of the nonexistence of any mitigating factors, clearly justified the trial court's determination that a sentence of death is proper.
We therefore affirm the conviction for first-degree murder and the sentence of death.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.