561 So.2d 309 (1990)
James SAYIH, Appellant,
v.
Irwin PERLMUTTER, M.D., and Perlmutter, Dooley and Morrison Neurosurgical Associates, P.A., Appellees.
Nos. 88-1549, 88-2122.
District Court of Appeal of Florida, Third District.
March 6, 1990.
Rehearing Denied June 13, 1990.
*310 Freshman, Freshman & Traitz, Miami, Hershoff, Levy & Swartz and Jay M. Levy, Miami, for appellant.
Lanza, O'Connor, Armstrong, Sinclair & Tunstall, Coral Gables, and Rhea P. Grossman, Miami, for appellees.
Before HUBBART, FERGUSON and GERSTEN, JJ.
FERGUSON, Judge.
The main question presented is whether the trial court committed reversible error in failing to grant a new trial where the jury was permitted to consider extraneous exhibits erroneously included in materials sent to the jury room.
James Sayih, the plaintiff-appellant, brought this medical malpractice action against Dr. Irwin Perlmutter, a neurosurgeon, alleging, inter alia, an inaccurate neurological diagnosis involving an elbow fracture, an untimely nerve transposition surgical procedure, and negligent post-operative care. It is uncontroverted that the appellant now suffers a total dysfunction of the arm.
After the plaintiff had rested his case at trial, defense counsel offered to introduce the records of the hospital where the plaintiff had been treated for the elbow injury, along with Dr. Perlmutter's office charts pertaining to the same injury. In a brief on-the-record discussion, defense counsel assured the court that the exhibits sought to be introduced pertained only to this case:
The Court: Mr. Davis, what can I do for you?
Mr. Davis: Before the defense starts putting on its witnesses, we would like to admit into evidence the records of Palmetto General Hospital and the records of Doctor Perlmutter's office chart.
The Court: Any objection?
Mr. Waksman: Palmetto and what else?

*311 Mr. Davis: And Dr. Perlmutter's records.
Mr. Waksman: No objection.
The Court: About this case?
Mr. Davis: Yes.
The Clerk: Defendant's Exhibit B Composite.
Although no evidence was presented at trial as to prior spinal surgeries, the jury interrupted its deliberations to request information about previous operations:
How can we find out how previous spinal surgery may have contributed to the patient's condition. Past history shows back surgery in 1977 on four or five discs?
The above jury inquiry was the first clue that extraneous materials had been delivered to the jury room. On an examination of exhibit B, after the jury had returned its verdict, it was discovered that the records included  in addition to the Palmetto Hospital records and Dr. Perlmutter's office charts  a University of Miami Pain Clinic Discharge Report reflecting that the plaintiff was diagnosed with a hysterical paralysis of his right hand, as addicted to drugs, and that he was paralyzed for two years following a lumbar laminectomy from which he had a spontaneous recovery. Also included in the records given the jury was a 1980 hospital report describing back injuries and related emotional problems along with other references suggesting that the accident was a workers' compensation case.
It is not disputed that there was no testimony relating the Pain Clinic Discharge Report, and the 1980 hospital record, to the claim in this case that the defendants negligently diagnosed and treated the plaintiff's elbow injury.
The appellees contend, first, that Sayih's own lack of due diligence caused the error relied upon by him as grounds for a new trial. They argue, second, that since the claimed prejudice flows from the psychiatric matters contained in the Discharge Report and the 1980 hospital report, appellate review is barred by the "two-issue rule." More specifically, the appellees argue that the general verdict returned does not disclose whether the jury found that the defendants' conduct met the required standard of care  unrelated to matters found in the extraneous exhibits  or whether it found that the plaintiff's disabilities were related to a preexisting psychiatric disorder and thus not proximately caused by any conduct of the defendants.
That plaintiff's counsel breached a duty to thoroughly examine the records to ascertain that they were as defense counsel represented them to be is not dispositive. Defense counsel had the same duty to insure that no extraneous materials were submitted to the jury, and certainly had an obligation to accurately represent to the court, on inquiry, the contents of the exhibits. If the misrepresentation as to the contents of the exhibit had been intentional, we would have condemned it as a contemptuous "ambush" tactic. See Bendeck v. Berry, 546 So.2d 14 (Fla. 3d DCA 1989) (Cope, J., concurring); Chatmon v. Woodard, 492 So.2d 1115, 1116 n. 2 (Fla. 3d DCA 1986); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337 (Fla. 3d DCA), cert. denied, 378 So.2d 342 (Fla. 1979). Nevertheless, even in the absence of intentional misconduct, the legal inquiry is whether the mutual mistake of the attorneys in failing to exclude the unrelated medical records was prejudicial to the plaintiff.[1]
*312 Contrary to what is said in the dissenting opinion, the plaintiffs filed a motion for new trial on February 17, 1987  seven days after a final judgment had been entered on the jury verdict of February 6, 1987. One of the grounds stated for the new trial was the introduction into evidence of "irrelevant and highly prejudicial medical records." The order denying the motion for new trial alludes to the failure of "counsel for the parties to review all hospital/medical records before being submitted to the jury" as the basis for denying the motion. The issue raised by that ruling is the first point on appeal. The error, which was not discovered until after the jury had concluded its deliberations, was not subject to a contemporaneous motion and curative instruction.[2]
Jurors should be free of evidence not received during trial. See Snook v. Firestone Fire & Rubber Co., 485 So.2d 496 (Fla. 5th DCA 1986); Edelstein v. Roskin, 356 So.2d 38 (Fla. 3d DCA 1978). It is generally reversible error to deliver to the jury room any materials which have not been admitted into evidence where the materials are of such character as to influence the jury. See Walker v. Sparkling Pools, Inc., 171 So.2d 205 (Fla. 3d DCA 1965) (jury should not have been permitted to take into jury room, in negligence case, a mechanical jack which had never been introduced into evidence); Crawford v. Brown, 321 Ill. 305, 151 N.E. 911 (1926) (error to allow jury to take with them to the jury room the letters of plaintiff's children commenting on his mental condition); Dartnell v. Bidwell, 115 Me. 227, 98 A. 743 (1916) (permitting photographs which have been excluded from evidence to go into jury room is reversible error if they were of such a character as to influence the jury). Unquestionably, the extraneous contents of the two records given the Sayih jury by mistake were of such character as to improperly influence.
As in Brown v. Sims, 538 So.2d 901, 907, n. 4 (Fla. 3d DCA), rev. granted, 547 So.2d 635 (Fla. 1989), we find it unnecessary to decide whether a plaintiff is required to specifically demonstrate by special interrogatory verdict, on appeal of a judgment entered for the defendant in a negligence action, the precise element a jury found unproven in a single cause. The prejudice in this case was not caused by the reference to psychiatric matters alone. From the nature of the inquiry, it appears that the jury may have been diverted in its deliberations by a concern that the history of hysteria paralysis, drug use, and back injuries were factors in Sayih's present total arm dysfunction  without reaching the standard of care issue. Prejudice may thus be inferred, in this case, from the violation of the general rule that materials not admitted as evidence should not be taken into the jury room, based on (1) the captivating quality of the extraneous material, and (2) the jury's preoccupation with that material.
We need not address the juror-witness contact issue which, although meritorious, is based on an event not likely to reoccur in the new trial. The remaining issues are without merit.
Reversed and remanded for a new trial.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would affirm the final judgment under review and reverse the award of attorney's fees for the defendants.
Contrary to today's decision, I think the trial court was eminently correct in denying the plaintiff's post-trial motion for new trial against a claim that certain medical records were erroneously sent to the jury room and improperly considered by the jury. The complained-of records were, in fact, contained in a composite exhibit which was introduced in evidence at trial; this *313 being so, the trial court obviously committed no error in allowing the jury to examine the subject medical records as part of the evidence received at trial.[1] Moreover, any issue as to the admissibility of these medical records has not, in my view, been preserved for subsequent review on either a post-trial motion for new trial or on appeal before this court. This is so because the plaintiff did not object to the admissibility of the subject medical records at trial and has not otherwise made a showing of fundamental error  deficiencies which, under settled Florida law, preclude both the trial court from granting a new trial based on this alleged error[2] and this court from reviewing the alleged error on appeal.[3]
I recognize that defendant's counsel may have inaccurately described the medical records exhibit when it was offered in evidence at trial, but I am unaware of any authority  and the court cites none  that this fact absolves the plaintiff from objecting to such exhibit when offered in evidence[4]; beyond that, the plaintiff has not made a convincing case  and neither has the court  that the subject medical records were so overwhelmingly prejudicial to the plaintiff as to amount to a fundamental error, i.e., an error which went to the very foundations of the case or the merits of the cause of action.[5] Indeed, it is settled that "the doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." Ray v. State, 403 So.2d 956, 960 (Fla. 1981). Neither showing has been made in the instant case.
The trial court was in error, however, in entering an attorney's fee award against the plaintiff under Section 768.56(1), Florida *314 Statutes (1981). In my view, the plaintiff proved below that he was "insolvent or poverty-stricken" within the meaning of this statute; accordingly, he could not be ordered to pay attorney's fees thereunder.[6]
Finally, I find no merit in the remaining points on appeal raised by the plaintiff.
NOTES
[1] In Leonard v. Schall, 125 Minn. 291, 146 N.W. 1104 (1914), checks and drafts received into evidence were placed in an envelope. The attorneys, supposing that the envelope contained these and nothing else, placed it among the exhibits sent to the jury room. After the verdict, it was discovered that the envelope also contained an extraneous memorandum which had not been offered in evidence. The court held that since it was counsel's duty to examine the papers and see that only proper papers were given to the jury, a new trial was not justified unless "it be made to appear that the jury were improperly influenced by it." Schall, 125 Minn. 291, 146 N.W. at 1106. See also Government of Virgin Islands v. Joseph, 685 F.2d 857 (3d Cir.1982) (although defense counsel should have carefully checked each exhibit the prosecutor, who was under the same duty of care, also neglected to exclude an improper and highly prejudicial confession and, therefore, deprived the defendant of a fair trial).
[2] Bishop v. Taylor, 41 Fla. 77, 25 So. 287 (1899), and Sears Roebuck & Co. v. Jackson, 433 So.2d 1319 (Fla. 3d DCA 1983), relied on by the dissent, are not controlling in that they are based on a failure to make objections to improper evidence presented in counsel's knowing presence. This case is controlled by the practical rule of Shank v. Fassoulas, 304 So.2d 469 (Fla. 3d DCA 1974), as explained in Sears Roebuck & Co. v. Jackson, that an error which is brought to the trial court's attention as soon as it is discovered may be timely, even though not contemporaneous.
[1] See Routh v. Williams, 141 Fla. 334, 339, 193 So. 71, 73 (1940); Lamb v. State, 90 Fla. 844, 849-50, 107 So. 530, 532 (1925); Brantley v. Tampa Gen. Hosp., 315 So.2d 233, 234 (Fla. 2d DCA), cert. dismissed, 320 So.2d 396 (Fla. 1975).
[2] The plaintiff first objected to the admission of the subject medical records in his post-trial motion for new trial, and thus raised an otherwise unpreserved error as a basis for his new trial request. This being so, the case is governed by the rule of law stated in Bishop v. Taylor, 41 Fla. 77, 25 So. 287 (1899): "Where evidence is received without objection, and no motion to strike it out is made, the reception of such evidence constitutes no ground for granting a new trial," (syllabus by court, no. 6), and elaborated on in Sears Roebuck & Co. v. Jackson, 433 So.2d 1319, 1322 (Fla. 3d DCA 1983) (footnote omitted) (emphasis added),

"What emerges from the seeming divergence between the authorities which hold that a new trial cannot be granted on a ground which was not preserved by timely objection and the authorities which hold that a trial court is empowered to grant a new trial even absent a timely objection is simply the consolidated rule that timely objection is as much a predicate for the grant of a new trial by the lower court as it is a predicate for reversal on appeal, unless the error can be said to be so fundamental as to extinguish a party's right to a fair trial.
We know of no reason why a trial court should be given any greater power than an appellate court to grant a new trial based on a claimed but unpreserved error."
See Rety v. Green, 546 So.2d 410, 422 (Fla. 3d DCA) (following the Sears Roebuck rule stated above), rev. denied, 553 So.2d 1165 (Fla. 1989); Miami Int'l Hatcheries, Inc. v. General Mills, Inc., 168 So.2d 83, 84 (Fla. 3d DCA 1964) (grant of new trial based on the admission of certain alleged inadmissible testimony held reversed because party obtaining the new trial did not object to the offending testimony at trial).
[3] Castor v. State, 365 So.2d 701, 703 (Fla. 1978) (contemporaneous objection rule stated); Swan v. Florida Farm Bureau Ins. Co., 404 So.2d 802, 803 (Fla. 5th DCA 1981); Marks v. Delcastillo, 386 So.2d 1259, 1267 (Fla. 3d DCA 1980), rev. denied, 397 So.2d 778 (Fla. 1981).
[4] It should be noted that this is not a case where the asserted error "could not have been brought to the trial court's attention any sooner than in the motion for new trial," thereby permitting the error to be raised in said motion, Sears Roebuck & Co. v. Jackson, 433 So.2d 1319, 1321 (Fla. 3d DCA 1983)  as was true in Shank v. Fassoulas, 304 So.2d 469 (Fla. 3d DCA 1974), where the plaintiff quite properly filed a motion for new trial attacking a jury damages verdict as being inadequate, a ground which could not have been known until after the verdict was rendered. Without dispute, the plaintiff in the instant case could have examined and objected to the disputed medical records exhibit when offered in evidence by the defendant at trial; his failure to do so precludes him from raising the issue for the first time on a motion for new trial or subsequently on appeal, absent a showing of fundamental error. Sears Roebuck & Co.
[5] See Sanford v. Rubin, 237 So.2d 134, 137 (Fla. 1970); Wasden v. Seaboard Coast Line R.R., 474 So.2d 825, 831 (Fla. 2d DCA 1985), rev. denied, 484 So.2d 9 (Fla. 1986).
[6] Although the court does not specifically address the attorney's fee issue, I assume that its reversal of the final judgment in favor of the defendants necessarily means the attorney's fee award in favor of the defendants is also implicitly reversed.