JORGENSON, Judge,
dissenting.
I respectfully dissent. In my view, the trial court’s order denying plaintiffs motion for a new trial must be reversed due to the undisputed fact that nonevidentiary materials were given to the jury during deliberations. Moreover, there is a sufficient record from which it can be determined that the error was prejudicial and that a new trial is required.
Brancaccio sued Jackal Corporation’s restaurant for injuries sustained when he slipped and fell while departing the restaurant. Plaintiff contended that he slipped on a wet rubber mat on the inclined surface of the restaurant’s exit/entrance way. Defendant contended that plaintiff did not slip until he reached the sidewalk, beyond defendant’s premises. The exact location of Brancaccio’s slip was thus the critical issue for the jury to decide.
The majority opinion seizes upon the fact that we have not been provided with a transcript of entire proceedings below. While this is true, we do have the benefit of a partial transcript of the trial and the entire transcript of the hearing on plaintiffs motion for a new trial. During trial Dr. Harren-stein, defendant’s expert liability witness, testified that defendant was not liable for the accident in question. Dr. Harrenstein had made a detailed chart of the accident scene on large (27" x 32") sheets of paper and used this chart during his testimony. The sheets of paper that make up this chart are included in the record before this court. During the course of his testimony, Dr. Harrenstein added a “stick” figure, which was supposed to depict the plaintiffs body position at the time of the accident, to the chart. Dr. Harren-stein positioned the figure that represented plaintiffs body so that it was on the sidewalk, and not on the mat as plaintiff had testified. The chart was not introduced into evidence.
The partial transcript of the trial proceedings discloses that, after the jury had deliberated for several hours, it sent a note to the *116 court which read: “Can we see the notes on the board.” The trial judge presumed that the jury was referring to Dr. Harrenstein’s chart. Counsel for plaintiff strenuously objected to the chart being allowed into the jury room as it was not in evidence. The trial court overruled the objection and directed the bailiff to take the chart to the jury room. The jury deliberated for several more hours and finally returned with a verdict in favor of defendant. Plaintiff moved for a new trial and specifically cited the admission of the chart into the jury room as grounds for its motion, which the trial court denied.
The trial court committed reversible error in admitting prejudicial, nonevidentiary material into the jury room. This error can only be remedied by granting a new trial. “The jury is not permitted to take with them into the jury room for use in their deliberations any exhibit which is not introduced into evidence.” Spencer A. Gard, Florida Evidence § 13:15, at 42 (2d ed. 1980); Bottoson v. State, 443 So.2d 962, 966 (Fla.1983), cert, denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984). The prohibition against allowing unadmitted papers and articles into the jury room stems from a duty to guard against an “impermissible intrusion of the jury’s deliberative process.” State ex rel. Pryor v. Smith, 239 So.2d 85, 86 (Fla. 1st DCA 1970) (citing State ex rel. Larkins v. Lewis, 54 So.2d 199 (Fla.1951)). Florida courts take this duty very seriously. See, e.g., Yanes v. State, 418 So.2d 1247, 1248 (Fla. 4th DCA 1982) (“[W]e feel that the jury process must be firmly governed to the end that the jury will decide cases limited strictly to the evidence presented in court and the law charged to them by the court. A slipshod attitude as to such matters can only undermine the acceptance and confidence which our system has earned.”); Meixelsper-ger v. State, 423 So.2d 416, 417 (Fla. 2d DCA 1982) (“One of the most sacred and carefully protected elements of our system of criminal — or civil, for that matter — justice is the sanctity of an impartial jury that has not been infected by unlawful or improper influences. This is absolutely vital to the guarantee of a fair trial to an accused. The safeguarding of that ideal must be zealously guarded.”). The rule prohibiting improper influences in the jury room applies with equal force in civil as well as criminal cases. Id.
The jury’s consideration of the chart was clearly prejudicial. The precise location of plaintiffs slip was the critical disputed issue at trial. The jurors’ request to view the chart before rendering their verdict establishes that the error was harmful. Consequently, a new trial is required. Bottoson, 443 So.2d at 966; see also Sayih v. Perlmutter, 561 So.2d 309, 312 (Fla. 3d DCA) (“It is generally reversible error to deliver to the jury room any materials which have not been admitted into evidence where the materials are of such character as to influence the jury.”), rev. denied, 576 So.2d 290 (Fla.1990); McCormick on Evidence § 217 n. 3 (John W. Strong ed., 4th ed. 1992) (“[I]t would appear that most courts hold that the unadmitted exhibit must have been of a potentially prejudicial nature to warrant reversal.”). Compare Strickland v. State, 447 So.2d 322 (Fla. 1st DCA) (any error as to the trial court’s allowance of charts which were not in evidence to go into the jury room could only be deemed harmless because the evidence against defendant was overwhelming), rev. denied, 455 So.2d 1033 (Fla.1984), with Louisiana-Pacific Corp. v. Mims, 453 So.2d 211 (Fla. 1st DCA 1984) (trial court erred in allowing a chart which was not in evidence to remain with the jury during deliberations; effect of this error could be removed only by the grant of a new trial).
In sum, the record conclusively demonstrates that the chart was not in evidence, yet was erroneously allowed into the jury room and prejudiced plaintiffs case. I would reverse and remand for a new trial.