# GEORGE SCHLOSSER v. GREAT NORTHERN RAILWAY COMPANY.

## (127 N. W. 502.)

**Carriers — Killing of Stock — Principal and Agent — Authority to Execute Shipping Agreement.**

Action to recover damages for negligently killing three horses belonging to plaintiff while being shipped from Grand Rapids, Minnesota, to Hunter, North Dakota. Plaintiff, in the fall of 1907, shipped twenty-two horses from Hunter, North Dakota, to Grand Rapids, Minnesota, to the firm of Sutton & Mackey, over defendant's line. Sutton & Mackey were engaged in logging in Northern Minnesota during the winter months, and plaintiff's horses were shipped by him to them for work in the woods. Under the agreement, plaintiff was to and did pay the expenses of shipping the horses from Hunter, North Dakota, to Grand Rapids, Minnesota. Sutton & Mackey, in addition to the compensation paid plaintiff for the use of his horses, were to deliver them after the season was ended to plaintiff at Hunter, North Dakota, free of charge. On March 19, 1908, one of Sutton & Mackey's men, Crocker by name, brought the horses to Grand Rapids, and shipped them over defendant's line to plaintiff in Hunter. Defendant's agent at Grand Rapids filled out the ordinary form of live stock shipping contract, upon information given by Crocker, and Crocker

executed the contract in the name of the plaintiff, by Crocker. The rate charged on this shipment was based on a valuation of $75 per head. *Held,* that plaintiff was not a party to the contract between Sutton & Mackey and defendant, that Crocker had no right or authority to sign plaintiff's name to the contract, and that plaintiff was entitled to recover the full value of the horses killed.

Opinion filed June 27, 1910.

Appeal from the District Court of Grand Forks county; *Chas. F. Templeton,* J.

Action by George Schlosser against the Great Northern Railway Company. From a judgment for plaintiff, and from an order denying a motion for judgment notwithstanding the verdict and for a new trial, defendant appeals.

Affirmed.

*Murphy & Duggan,* for appellant.

One intrusted by the owner to ship goods is presumed to have authority to sign terms of shipment. 1 Hutchinson, Carr. § 457; Armstrong v. Chicago, M. & St. P. R. Co. 53 Minn. 183, 54 N. W. 1059; California Powder Works v. Atlantic & P. R. Co. 113 Cal. 329, 36 L.R.A. 648, 45 Pac. 691.

The owner of personal property is bound by the acts of those to whom he intrusts it, while acting within the purpose and limits contemplated. Illinois C. R. Co. v. Sims, 77 Miss. 325, 49 L.R.A. 322, 27 So. 527; Welty v. Indianapolis & V. R. Co. 105 Ind. 55, 4 N. E. 410; Forks Twp. v. King, 84 Pa. 230.

*Skulason & Burtness,* for respondent.

An agent is liable to third persons for negligence resulting in the latter's injury, on account of acts of nonfeasance or misfeasance in the discharge of his agency. Mechem, Agency, §§ 569 et seq.; Lough v. John Davis & Co. 30 Wash. 204, 59 L.R.A. 802, 94 Am. St. Rep. 848, 70 Pac. 491; Stiewel v. Borman, 63 Ark. 30, 37 S. W. 404; Osborne v. Morgan, 130 Mass. 102, 39 Am. Rep. 437; Baird v. Shipman, 132 Ill. 16, 7 L.R.A. 128, 22 Am. St. Rep. 504, 23 N. E. 384; Delancy v. Rochereau, 34 La. Ann. 1123, 44 Am. Rep. 456; 2 Clark & S. Agency, §§ 595, 596; Orcutt v. Century Bldg. Co. 201 Mo. 424, 8 L.R.A. (N.S.) 929, 99 S. W. 1062; Rev. Codes 1905, subdiv. 3.

CARMODY, J.    This is an action brought by plaintiff in the district court of Grand Forks county for damages caused by the loss of three horses shipped over the defendant's railway. Verdict was directed at the trial for plaintiff; and from an order denying defendant's motion for judgment notwithstanding the verdict, and in the alternative for a new trial, and from the judgment entered, the defendant appeals.

The plaintiff, in the fall of 1907, shipped twenty-two horses from Hunter, North Dakota, to Grand Rapids, Minnesota, to the firm of Sutton & Mackey, over the defendant's line. Sutton & Mackey were engaged in logging in northern Minnesota during the winter months, and plaintiff's horses were shipped by him to them for work in the woods, getting out logs and timber. The agreement that plaintiff had with Sutton & Mackey, besides the compensation for the use of the horses, was that plaintiff should stand the expense of the shipment one way, and they the other. Plaintiff paid the expense going down, and they paid the expense coming back. The understanding was that plaintiff was to have his horses back when the season was over, no definite time being set. This was the agreement made at the time of the agreement as to the compensation for the use of the horses, and as part of that agreement. In addition, plaintiff paid certain other expenses incurred on the return trip for inspection of his horses at Larimore, and other expenses caused by delay on account of a wreck. Plaintiff made a trip to Grand Rapids for his horses, which were then out in the woods, and he returned without them, and with the same understanding that they were to return them to him at Hunter, North Dakota. About ten days later, on March 19th, 1908, one of Sutton & Mackey's men, Dick Crocker, brought the horses to Grand Rapids, and shipped them to the plaintiff. He presented them to the defendant's agent at Grand Rapids for shipment to Hunter, North Dakota, and the agent filled out the ordinary form of livestock shipping contract upon information given by Crocker, and Crocker executed the contract in the name of plaintiff, by Crocker. The agent got the name of the shipper, the consignee, and destination, number of horses and other *data* from the man in charge of the horses, filled the contract accordingly, placing the valuation of the horses at $75 each, indorsed the amount of freight based on that valuation, $71.82, on the contract, and Crocker executed the contract in Schlosser's name. The rate charged

on this shipment was based on the valuation of $75 per head, given by the shipping agent, and applied in all shipments of horses where the valuation given was under $100 per head. Where the valuation given exceeds $100 per head, a higher rate is fixed by the tariffs than that charged in this case. The valuation placed on the live stock by the shipper is always ascertained before stock is received by the carrier for shipment. The fixing of the liability of the carrier is an important part of the contract. Crocker was a man who had shipped horses a great many times and was familiar with the method of shipment, and knew he was signing a contract placing a valuation of $75 per head on the horses. Three of the horses so shipped were killed in transit, as the answer admits. The plaintiff brought this action in tort against the carrier for the value of the horses destroyed, and the carrier defended on the ground of a contract of limited liability, made by it with the bailees. Plaintiff testified that the three horses were worth $550. Defendant tendered a judgment for the amount specified in the contract, $75 per head, and costs. At the close of the testimony, a verdict for $550 and interest was directed in plaintiff's favor.

Appellant assigns several errors. The principal ones, however, consist in granting plaintiff's motion for a directed verdict, and in a denial of defendant's motion for judgment notwithstanding the verdict, in accordance with defendant's offer of judgment. Other errors as to the ruling of the trial court on the admission of evidence are assigned, but they depend on whether the learned trial court erred in granting the motion of plaintiff for a directed verdict, and in denying the motion of defendant for judgment notwithstanding the verdict.

In the case at bar the contract was a printed contract, and the valuation of horses at $75 each was printed therein. Appellant contends that Dick Crocker was authorized to sign the contract, and that plaintiff was bound thereby. It further contends that the general and universally accepted proposition, which controls this case, is the following: "If the owner of the goods intrusts them to another for the purpose of having them delivered to a carrier for transportation, the person to whom they are so intrusted will be presumed to have authority to agree with the carrier upon the terms of shipment, and this authority would include the right to enter into a reasonable agreement on behalf of the owner, restricting the carrier's liability as insurer."

In our judgment, this general rule has no application to the facts in the case at bar. The horses were not intrusted to Sutton & Mackey for the purpose of having them delivered to a carrier for transportation. The contract between plaintiff and Sutton & Mackey was one of hiring, and under its terms the horses were to be returned to plaintiff at Hunter, North Dakota, at the expense of Sutton & Mackey.

Section 5516, Rev. Codes 1905, reads as follows: "Hiring is a contract by which one gives to another the temporary possession and use of property, other than money, for reward, and the latter agrees to return the same to the former at a future time."

Section 5540 of said Code reads as follows: "At the expiration of the term for which personal property is hired, the hirer must return it to the latter at the place contemplated by the parties at the time of hiring, or if no particular place was so contemplated by them, at the place at which it was at that time."

In the case at bar it was definitely agreed that the horses were to be returned to plaintiff at Hunter, North Dakota. Plaintiff had nothing to say as to the means employed by Sutton & Mackey to return the horses. They might, instead of shipping the horses by rail, have driven them overland to Hunter, but they saw fit to employ a common carrier for this purpose. In making this shipment the defendant common carrier became the agent of Sutton & Mackey, and plaintiff has the right to bring the action for the destruction of his property against either Sutton & Mackey or their agent, the carrier. The rule is that an agent is liable to third parties for negligence, resulting in injury to them in the discharge of his agency. An agent, like other persons, in discharging his duties to his principal, is bound to recognize and respect the rights and privileges of others. He must take care that he does not, by his own act, unnecessarily injure another. If he fails to do so, either negligently or intentionally, and thereby causes an injury to another, he is liable for damages to the party injured. The fact that he was acting as agent at the time will not relieve him from liability. Everyone, whether he is principal or agent, is responsible directly to persons injured by his own negligence, in fulfilling obligations resting upon him in his individual character, and which the law imposes upon him independent of contract. The defendant, being a

common carrier, owed the duty of such common carrier to the public, and is liable to the plaintiff for its negligence.

Where an agent is guilty of misfeasance, that is, where he has actually entered upon the performance of his duties to his principal, and in doing so fails to respect the rights of others, by doing some wrong, as where he fails or neglects to use reasonable care and diligence in the performance of his duties, he will be personally responsible to a third person who is injured by reason of his misfeasance. An agent's liability in such cases is not based upon the ground of his agency, but on the ground that he is a wrongdoer, and as such, is responsible for any injury he may cause. 2 Clark & S. Agency, § 595; Stiewel v. Borman, 63 Ark. 30, 37 S. W. 404; Delaney v. Rochereau, 34 La. Ann. 1123, 44 Am. Rep. 456. See also subdivision 3, sec. 5791, Rev. Codes 1905.

The owner of goods shipped by a carrier really sustains the damage either from their loss or injury, and there is no doubt that he may maintain an action against the carrier therefor, not because he has any contract with him for the carriage, but because the carrier has the goods lawfully in his possession. It has become his duty to carry them safely, and deliver them to the consignee subject only to a lien for his charges, and a wrongful refusal or failure to do so is a tort for which the owner may maintain an action. Hale, Bailments & Carriers, p. 548.

It was the duty of Sutton & Mackey to return the horses to the plaintiff at Hunter, free of charge. Having delivered the horses to the defendant at Grand Rapids, Minnesota, for shipment to the plaintiff at Hunter, North Dakota, and the defendant, by its negligence, having killed three of the horses, it was liable to the plaintiff for the full value thereof. The plaintiff was not a party to the contract between Sutton & Mackey and defendant. Crocker had no right or authority to sign plaintiff's name to the contract.

The order and judgment appealed from are affirmed.

All concur, except MORGAN, Ch. J., taking no part.