**FOLEY EQUIPMENT, INC., Plaintiff and Appellant,**

v.

**KRAUSE PLOW CORPORATION, Defendant and Appellee.**

Civ. No. 890379.

Supreme Court of North Dakota.

May 15, 1990.

Lamont, Skowronek & Dobrovolny, Minot, for plaintiff and appellant; argued by Collin P. Dobrovolny.

Pearce & Durick, Bismarck, for defendant and appellee; argued by Lawrence A. Dopson.

GIERKE, Justice.

Foley Equipment, Inc. (Foley), appeals from a district court judgment which ordered Krause Plow Corporation (Krause) to repurchase all Krause manufactured parts remaining in Foley's inventory, not to exceed $4,758, and to pay Foley $130.18 for its costs and disbursements. We affirm.

Foley is a farm implement dealer in Minot, North Dakota, which began business on December 1, 1977, when it purchased an existing implement dealership, L.E. Beeter. When Foley purchased L.E. Beeter, L.E. Beeter's inventory was partially comprised of products manufactured by Krause which

L.E. Beeter had carried in its inventory since 1964. After the purchase, Foley desired to continue to sell the Krause line of farm tillage products.

In February of 1978, Foley entered into an initial dealer agreement with Krause which was to continue until August 31, 1978. The agreement provided, among other things, that Krause would sell to Foley all implements, parts and accessories that Foley needed and that Foley would pay for the goods in accordance with Krause's schedule of terms. After entering into the initial dealer agreement, Krause and Foley, on a yearly basis, executed one-year extensions to the dealer agreement until August 31, 1984. At that time, Krause refused to approve an extension agreement for the following year.

Nevertheless, Foley operated without an extension agreement from August 31, 1984, until September of 1985 at which time Krause notified Foley of their termination of the dealership agreement. Foley objected to the termination by requesting reinstatement of his dealer agreement or, in the alternative, demanding that the portion of Foley's parts inventory that was manufactured by Krause be repurchased according to North Dakota law.[1] Krause responded that North Dakota law did not apply to the dealership agreement and that the basis for the termination was Foley's disregard for its payment obligations to Krause.

Foley then prepared a list of parts to return to Krause. Krause refused to accept a substantial amount of the parts and indicated to Foley that they would be discounting any parts accepted by 20% and 40%. Foley refused to return the parts unless all parts were accepted and discounted according to Section 51–07–01, N.D.C.C. Foley then filed suit against Krause.

After Krause's motion for summary judgment was denied, the case was scheduled for trial. At the bench trial, Foley maintained that Section 51–07–01, N.D. C.C., applied to the facts of the case thus obligating Krause to repurchase any re-

1. The North Dakota law which Foley referred to is contained in Section 51–07–01, N.D.C.C. This section provides in pertinent part:

"51–07–01. Retail implement or car dealer may recover price of articles upon discontinuance of contract by wholesaler or retail dealer. Whenever any person, firm, or corporation engaged in the business of selling and retailing farm implements and repair parts for farm implements, or in the business of selling and retailing automobiles or trucks, or repair parts for automobiles or trucks, enters into a written contract whereby such retailer agrees to maintain a stock of parts or complete or whole machines, or attachments with any wholesaler, manufacturer, or distributor of farm implements, machinery, attachments, or repair parts, or automobiles, trucks, or repair parts, and either such wholesaler, manufacturer, or distributor or the retailer desires to cancel or discontinue the contract, such wholesaler, manufacturer, or distributor shall pay to such retailer unless the retailer should desire to keep such merchandise, a sum equal to one hundred percent of the net cost of all current unused complete farm implements, machinery, attachments, automobiles, and trucks including transportation charges which have been paid by such retailer, and eighty-five percent of the current net prices on repair parts, including superseded parts listed in current price lists or catalogs which parts had previously been purchased from such whole-saler, manufacturer, or distributor, and held by such retailer on the date of the cancellation or discontinuance of such contract or thereafter received by such retailer from the wholesaler, manufacturer or distributor. The wholesaler, manufacturer or distributor shall also pay such retailer a sum equal to five percent of the current net price of all parts returned for the handling, packing, and loading of such parts back to the wholesaler, manufacturer, or distributor. Upon the payment of the sum equal to one hundred percent of the net cost of such farm implements, machinery, attachments, automobiles, and trucks, plus transportation charges which have been paid by the retailer and eighty-five percent of the current net prices on repair parts, plus freight charges which have been paid by the retailer, plus five percent of the current net prices for handling and loading costs on repair parts only, the title to such farm implements, farm machinery, attachments, automobiles, trucks, or repair parts shall pass to the manufacturer, wholesaler, or distributor making such payment, and such manufacturer, wholesaler, or distributor is entitled to the possession of such farm implements, machinery, attachments, automobiles, trucks, or repair parts. All payments required to be made under this section must be made within thirty days after the final settlement between the retailer and the wholesaler, manufacturer, or distributor."

maining parts from them in accordance with the statute. Additionally, Foley argued that Krause terminated the dealership agreement without cause and in bad faith giving rise to general and special damages pursuant to Section 51–07–01.1, N.D.C.C.[2] Foley contended that they suffered damages for a five-year period[3] of $32,524.88 for lost profits on the sale of Krause parts, $17,244 for lost profits on sales of new Krause units, $4,500 for lost profits on additional miscellaneous sales derived from customer traffic generated by Krause purchases, and $58,713.84 for lost profits on sales of non-Krause equipment sold to Krause customers.

Krause contended that Section 51–07–01 did not apply to the dealership agreement.[4] Secondly, Krause maintained that they did not renew the dealership agreement with Foley because of credit problems they had been experiencing with Foley. Thus, Krause argued that they had good cause to not renew the agreement thereby making Section 51–07–01.1 inapplicable. Further, Krause argued that the damages sought by Foley were speculative in nature and not based on adequate evidence so as to grant recovery.

The trial court held that Section 51–07–01, N.D.C.C., obligated Krause to repurchase the existing Krause parts in Foley's inventory for $4,758. With regard to Foley's bad faith argument, the trial court found that the history of the Foley dealership indicated "sufficient problems as resulting from the North Dakota economy which justified Krause in terminating the agreement.... I find no bad faith." Further, the court held that all of Foley's alleged damages were speculative and not based on adequate evidence so as to provide certainty as to the nature and extent of damage. This appeal followed.

On appeal, Foley argues for review of three issues. Initially, Foley contends that the trial court erred in finding that Krause did not terminate the dealership agreement in bad faith. Secondly, Foley argues that the trial court erred in finding that their alleged damages were speculative and not based on adequate evidence. Finally, Foley maintains that the 19–month delay from the trial date to the trial court's opinion constitutes an unreasonable delay thereby requiring this Court to employ a de novo standard of review when reviewing the trial court's findings.

Because the issue of whether Krause's termination of the Foley dealership agreement was made in good faith is the disposi-

2. Section 51–07–01.1 provides in pertinent part:

"1. Any manufacturer, wholesaler, or distributor of farm implements, machinery, and repair parts therefor, or of automobiles, trucks, and repair parts therefor, who enters into a contract with any person, firm, or corporation engaged in the business of selling and retailing farm implements and repair parts for farm implements, or in the business of selling and retailing automobiles or trucks or repair parts for automobiles or trucks whereby such retailer agrees to maintain a stock of parts or complete or whole machines or attachments, automobiles, or trucks may not terminate, cancel, or fail to renew any such contract with the person, firm, or corporation without good cause.

"2. For the purpose of this section, good cause for terminating, canceling, or failing to renew a contract is limited to failure by the person, firm, or corporation in the business of selling and retailing to comply with those requirements imposed by the written contract between the parties. Further, the determination by the manufacturer, wholesaler, or distributor of good cause for such termination,

cancellation, or failure to renew must be made in good faith.

"In any action against a manufacturer, wholesaler, or distributor for violation of this section, the manufacturer, wholesaler, or distributor shall establish that the termination, cancellation, or failure to renew was made in good faith for good cause as that term is defined in this section. If the manufacturer, wholesaler, or distributor fails to establish good cause for its action it is liable for all special and general damages sustained by the plaintiff, including, but not limited to, the costs of the litigation and reasonable attorneys' fees for prosecuting the action, and the plaintiff, where appropriate, is entitled to injunctive relief."

3. Foley calculated its loss of profits based upon figures over a five-year period which consisted of actual figures from two years before trial together with projected figures for the immediate three years after trial.

4. Since this argument is not an issue on appeal, we decline to elaborate on Krause's contentions with regard to Section 51–07–01, N.D.C.C.

tive issue on appeal, we decline to address Foley's arguments pertaining to damages and our standard of review.

On appeal, Foley concedes that it was delinquent on its payments to Krause for periods of two months, five months, and 17 months on three pieces of equipment ordered from Krause in September of 1982. Nevertheless, Foley maintains that Krause terminated the dealership agreement in bad faith and without cause for several reasons. Initially, Foley contends that Krause waived the payment delinquencies by renewing their dealership agreement for fiscal years 1983 and 1984 and continuing to sell parts to it even though they were in default on the three equipment notes. Secondly, Foley argues that its payment problems were caused by the decline in the North Dakota farm economy which was something it could not control. Finally, Foley argues that Krause acted in bad faith because they did not warn, state, or provide notice to Foley that the consequences of delinquent payments would be termination of the dealership agreement. Foley contends that if Krause would have told them that their dealership agreement was in jeopardy, arrangements would have been made to rectify the delinquent payments.

On the other hand, Krause maintains that it terminated the dealership agreement in good faith for good cause within the meaning of Section 51–07–01.1, N.D.C.C. In September of 1982, Foley purchased three units from Krause on one-year installment notes which provided for installment payments on March 10, 1983, June 10, 1983, and the final payment on September 10, 1983. Foley failed to make any of the payments called for in the three contracts on a timely basis. Therefore, Krause contends that Foley breached the dealership agreement thereby giving it good cause to terminate the agreement.

On appeal, this Court must determine whether the existence of good faith and good cause for termination of a dealership agreement is a finding of fact or a conclusion of law. In distinguishing between a finding of fact and a conclusion of law, this

Court has held that a finding of fact is reached by natural reasoning while a conclusion of law is reached by fixed rules of law. *Nygaard v. Robinson*, 341 N.W.2d 349, 354 (N.D.1983). Further, in making a distinction between a finding of fact and a conclusion of law, this Court considers whether or not facts are undisputed. We have held that "[I]f facts are undisputed and only one, if any, inference can reasonably be drawn from the facts, the determination of that inference is a question of law." *Nygaard, supra,* 341 N.W.2d at 354 (quoting *Slope County, Etc. v. Consolidation Coal Co.*, 277 N.W.2d 124, 127 (N.D. 1979)).

■ In this case, it is undisputed by the parties that Foley was in default on his payments to Krause for the three equipment purchases made in September of 1982. Therefore, it seems clear that the trial court's finding that Krause's termination of the dealership agreement was not in bad faith is one of law. Conclusions of law are fully reviewable on appeal. *Batla v. North Dakota State University*, 370 N.W.2d 554, 557 (N.D.1985).

■ We note that paragraph 12 of the Krause–Foley dealership agreement labels as a default, "any failure by dealer to pay for Tools, Parts or Accessories as provided herein...." As has been previously discussed, both parties agree that Foley was in default. Section 51–07–01.1(2) defines good cause for purposes of terminating a contract as "failure by the person, firm, or corporation in the business of selling and retailing to comply with those requirements imposed by the written contract between the parties." It seems quite clear that Foley did not comply with the written contract with regard to payment of equipment purchases.

■ Although Krause renewed Foley's dealership agreement after the defaults, we are not persuaded that Krause waived the breach of contract. As a creditor, Krause may have simply decided to give Foley more time to pay for the equipment. Krause's lenient position regarding the collection of Foley's indebtedness certainly does not equate to a waiver on their part of

Foley's breach of the dealership contract. *See* 28 Am.Jur.2d Estoppel and Waiver § 30 (1966) (waiver is a voluntary and intentional abandonment or relinquishment of a known right).

The circumstances of this case are extremely unfortunate in light of the current farm economy. However, we find that Foley breached the dealership contract thereby giving Krause good cause, for purposes of Section 51–07–01.1, to terminate the dealership agreement. After a full review of the record, we affirm the trial court's judgment.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.