WILLISTON FARM EQUIPMENT,
INC., Plaintiff and Appellant,

v.

STEIGER TRACTOR, INC., a foreign
corporation, Defendant and
Appellee.

Civ. No. 920140.

Supreme Court of North Dakota.

Aug. 10, 1993.

Charles L. Neff, of Bjella, Neff, Rathert, Wahl & Eiken, PC, Williston, for plaintiff and appellant. Appearance by F. Dan Bak-

er, President of Williston Farm Equipment, Inc.

Sarah Andrews Herman, of Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee.

**VANDE WALLE, Chief Justice.**

Williston Farm Equipment (WFE) appeals from a judgment entered upon a jury verdict dismissing its action against Steiger Tractor for bad faith termination of a farm implement dealership and from an order denying its post-trial motions. We affirm.

WFE owned a farm implement business in Williston, North Dakota, which carried several different lines of farm equipment, including a Steiger dealership from 1972 until Steiger terminated that dealership, effective October 29, 1984. According to Steiger, it terminated that non-exclusive dealership under a provision of a "Sales and Service Agreement" with WFE which required WFE to provide "sufficient working capital and net worth to fulfill properly all [its] responsibilities and duties." Steiger claimed that WFE was undercapitalized with a debt/equity ratio of about sixteen-to-one, while the industry average was about three-to-one. According to Steiger, WFE's debt/equity ratio had deteriorated since 1981, and its financial difficulties were compounded when Steiger learned that the personal assets of WFE's president and sole shareholder, F. Dan Baker, had been previously encumbered and were unavailable to meet Steiger's capitalization requirements.

WFE sued Steiger,[1] asserting that Steiger terminated the dealership without good cause and in bad faith in violation of Section 51–07–01.1, N.D.C.C.[2] WFE alleged that Steiger's stated reason for the termination was a pretext and that Steiger's ulterior motive for the termination was to offer a dealership for the Williston area to Tractor & Equipment Co. of Billings, Mon-

---

1. WFE initially sued Steiger, Inc., a Minnesota Corporation, and Tractor and Equipment Co. of Billings, Montana, in the district court in North Dakota. Steiger thereafter filed for bankruptcy and the state court action was stayed. WFE then brought an adversary proceeding in the bankruptcy action. Thereafter, Tenneco, Inc. [Tenneco] made a tender-offer bid for Steiger. Under the terms of the tender offer, Tenneco and Tenneco Credit Company [TCC], entered into a "guaranty" of claims against Steiger, and Steiger's bankruptcy action was dismissed. Steiger was subsequently incorporated as a Delaware corporation, and WFE proceeded with this action against the Delaware corporation.

2. Section 51–07–01.1, N.D.C.C., in effect at the time of the termination, provided:

 *"Termination of franchises to be done in good faith—Definition of good cause.*

 "1. Any manufacturer, wholesaler, or distributor of farm implements, machinery, and repair parts therefor, or of automobiles, trucks, and repair parts therefor, who enters into a contract with any person, firm, or corporation engaged in the business of selling and retailing farm implements and repair parts for farm implements, or in the business of selling and retailing automobiles or trucks or repair parts for automobiles or trucks whereby such retailer agrees to maintain a stock of parts or complete or whole machines or attachments, automobiles, or trucks, shall not terminate, cancel, or fail to renew any such contract with the person, firm, or corporation without good cause.

 "2. For the purpose of this section, good cause for terminating, canceling, or failing to renew a contract shall be limited to failure by the person, firm, or corporation in the business of selling and retailing to comply with those requirements imposed by the written contract between the parties. Further, the determination by the manufacturer, wholesaler, or distributor of good cause for such termination, cancellation, or failure to renew must be made in good faith.

 "In any action against a manufacturer, wholesaler, or distributor for violation of this section, the manufacturer, wholesaler, or distributor must establish that the termination, cancellation, or failure to renew was made in good faith for good cause as that term is defined in this section. If the manufacturer, wholesaler, or distributor fails to establish good cause for its action, it shall be liable for all special and general damages sustained by the plaintiff, including, but not limited to, the costs of the litigation and reasonable attorneys' fees for prosecuting the action, and the plaintiff, where appropriate, shall be entitled to injunctive relief. The provisions of this section shall apply to all contracts now in effect which have no expiration date and are continuing contracts and all other contracts entered into, amended, or renewed after July 1, 1975. Any contract in force and effect on July 1, 1975, which by its terms will terminate on a date subsequent thereto shall be governed by the law as it existed prior to July 1, 1975."

tana [T & E]. WFE asserted that the termination was arbitrary and discriminatory because Steiger imposed different, and stricter, financial conditions on WFE than on other similarly situated dealerships. WFE claimed that Steiger had not terminated other dealerships in worse financial predicaments.

Prior to trial, Steiger moved "for an order in limine limiting or restricting the testimony, comment or argument of or by [WFE], its attorneys or witnesses regarding Sales and Service Agreements between Steiger and any dealership" other than WFE. WFE resisted, contending that it intended to introduce evidence that Steiger treated it differently than other similarly situated dealerships, and that that evidence was relevant to show that the termination was in bad faith and without good cause. The trial court granted Steiger's motion in limine, concluding that, under Rule 403, N.D.R.Ev., the marginal relevance of that evidence was substantially outweighed by a number of dangers, including unfair prejudice, confusion of issues, undue waste or delay, and needless presentation of cumulative evidence.

The jury found that Steiger terminated WFE's dealership for good cause and in good faith and judgment was entered dismissing WFE's action. The trial court thereafter denied WFE's motions for a judgment notwithstanding the verdict and for a new trial. WFE appealed from the judgment and from the denial of its post-trial motions.

WFE contends that the trial court abused its discretion in granting Steiger's pre-trial motion in limine to exclude an entire category of evidence about Steiger's other dealerships, because the court's determination required it

"to try its case against Steiger in a vacuum devoid of any evidence which could establish the arbitrary, discriminatory and bad faith actions involved with Steiger's decision to terminate WFE as a Steiger dealer. The windfall to Steiger from this ruling was that Steiger no longer had to explain to a jury why WFE was given a sales quota and was termi-

nated for its alleged failure to have sufficient capitalization to carry on its dealer responsibilities when similarly situated dealers in the area which had much worse financial problems than WFE were given arbitrary preferential treatment, were not given a sales quota, and were allowed to keep their Steiger dealerships. WFE was further prevented from presenting evidence to the jury that WFE was a leading dealership in the area market and that Steiger had other options it was using with other Steiger dealers in the area other than dealer cancellation to guaranty payment of Steiger parts and equipment. Finally, WFE was prevented from presenting evidence that on the same day Steiger told WFE that it would be terminating WFE as a dealer for lack of adequate capitalization; Steiger, on the same day 93 miles away, made a sweetheart deal with Moe Motor Company to voluntarily repossess $220,815.30 of delinquent floor-plan inventory, sell the inventory at a loss, without recourse and keep Moe Motors as a Steiger dealer."

Steiger responds that the trial court did not abuse its discretion in determining that the probative value of evidence regarding other Steiger dealerships was substantially outweighed by unfair prejudice, confusion of issues, undue delay, and needless presentation of cumulative evidence. Steiger argues that the excluded evidence was not relevant to Steiger's subjective exercise of good faith under its contract with WFE and would have greatly prolonged the thirteen-day trial.

██ We review this issue within the context of the evidentiary rules for relevancy and the procedural posture of a motion in limine. Relevant evidence means evidence that would reasonably and actually tend to prove or disprove any fact that is of consequence to the determination of an action. *Shark v. Thompson*, 373 N.W.2d 859 (N.D.1985); Rule 401, N.D.R.Ev. Relevant evidence is generally admissible. Rule 402, N.D.R.Ev. A trial court has discretion to determine whether evidence is relevant, and its decision will not be reversed on

appeal absent an abuse of discretion. *State v. Biby*, 366 N.W.2d 460 (N.D.1985). Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, N.D.R.Ev. A trial court has discretion to balance the probative value of the proffered evidence against the dangers enumerated in Rule 403, N.D.R.Ev., and we also review that determination under the abuse-of-discretion standard. *Williams County Social Services Board v. Falcon*, 367 N.W.2d 170 (N.D.1985). *See* Explanatory Note to Rule 403, N.D.R.Ev.

■ In this case, WFE alleged that Steiger terminated the dealership without good cause and in bad faith under Section 51–07–01.1, N.D.C.C. The statute limits "good cause" for purposes of terminating a dealership to "failure by the person, firm, or corporation in the business of selling and retailing to comply with those requirements imposed by the written contract between the parties." *See Foley Equipment, Inc. v. Krause Plow Corp.*, 456 N.W.2d 121 (N.D.1990). The trial court instructed the jury on "good cause" and on "good faith" in language from that statute and from Section 1–01–21, N.D.C.C.[3] WFE did not object to the trial court's instructions, and they are the law of the case. *Erickson v. Schwan*, 453 N.W.2d 765 (N.D.1990); *Smith v. Anderson*, 451 N.W.2d 108 (N.D. 1990).

■ Pursuant to those instructions, Steiger asserts that "good faith" is a subjective standard based upon its honest belief that WFE could not comply with the

terms of the dealership agreement and that the only evidence relevant to that issue is evidence concerning Steiger's subjective reason for terminating that agreement. We do not believe that the concepts of good faith and good cause, as outlined in the statutes and the jury instructions, are that limited. Steiger's argument ignores the prophylactic purpose of Section 51–07–01.1, N.D.C.C., to equalize the disparity in bargaining power between manufacturers and dealers, and to protect dealers from a termination based solely upon a manufacturer's subjective whim and caprice. Steiger's argument is repugnant to our primary goal of statutory construction to interpret statutes to effect the legislative intent. *County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D.1985). Although "good cause" must relate to a dealer's compliance with the requirements imposed by a written dealership agreement and a manufacturer must make a good faith determination about good cause, we disagree with Steiger's assertion that the only evidence relevant to those issues is evidence concerning Steiger's subjective reason for terminating the dealership agreement. We believe evidence about a manufacturer's treatment of other similarly situated dealerships may have some probative value to establish "good cause" and "good faith" for the termination of a dealership agreement.

■ Notwithstanding that evidence about other dealerships may have some probative value, a trial court, in its discretion, may determine that that evidence is not relevant because the other dealerships are not similarly situated, or that the relevance of that evidence is substantially out-

---

**3.** The trial court's instruction on "good cause" followed Section 51–07–01.1, N.D.C.C., and provided:

"Likewise, and for purposes of actions dealing with termination of agricultural dealership contracts, 'good cause' is defined to mean that it is 'limited' to dealer's failure to comply with requirements imposed by the written contract between the parties."

The trial court's instruction on "good faith" followed Section 1–01–21, N.D.C.C., and provided:

"In a general or traditional sense 'good faith' is:

"—Equated with honesty of purpose

"—Freedom from fraudulent intent, as well as

"—Faithfulness to duty or obligation;

"and, in that sense, is also defined as consisting of an honest intention to abstain from taking any unconscientious advantage of another, (even through any forms and technicalities of law), together with an absence of all information or belief of facts which would render the transaction unconscientious."

weighed by the dangers enumerated in Rule 403, N.D.R.Ev. Here, the trial court initially made that determination in the context of a motion in limine, and we consider this issue within that context.

▮▮▮▮ A motion in limine is a procedural tool to ensure that potentially prejudicial evidentiary matters are not discussed in the presence of the jury. *Shark v. Thompson*, 373 N.W.2d 859 (N.D.1985). *See Twyford v. Weber*, 220 N.W.2d 919 (Iowa 1974). *See also* Annot., 63 A.L.R.3d 311, *Modern Status of Rules as to Use of Motion in Limine or Similar Preliminary Motion to Secure Exclusion of Prejudicial Evidence or Reference to Prejudicial Matters* (1975). However, the exclusion of evidence by a motion in limine does not dispense with the need for the proponent of evidence to make an offer of proof so the trial court can consider the proffered evidence in the context of other evidence presented during trial. *Twyford, supra. See Gorsuch v. Gorsuch*, 392 N.W.2d 392 (N.D.1986); Rule 103(a)(2), N.D.R.Ev. In the absence of an offer of proof about the substance of the excluded evidence, our review is limited. *Gorsuch, supra.*

WFE's offer of proof about Steiger's other dealerships consisted of evidence about Moe Motors, a dealership located in Wolf Point, Montana, about 90 miles from Williston. Our review of the trial court's exclusion of evidence about other dealerships is restricted to that proffered evidence. *See Gorsuch, supra.* WFE's offer of proof established that, at the same time that Steiger terminated WFE's dealership, Steiger repossessed Moe Motors' tractor inventory, sold those tractors at a loss and without recourse to Steiger, kept Moe Motors as a dealer, and granted it a $375,000 line of credit. The offer of proof included a contemporaneous internal memorandum by Steiger's credit manager indicating that he felt it was a good decision to "keep Moe as a Steiger dealer as there are no other choices, at present, in that market place." A later internal memorandum by the same credit manager indicated that he was "unable to determine at present, if the plan of action to save a dealer and dispose of its used inventory was successful or beneficial for Steiger and do not know if such will ever be recommended again."

Steiger responded to the offer of proof with evidence that Moe Motors and WFE were not in substantially similar financial condition. Steiger offered evidence that Moe Motors was well-capitalized with sufficient financial resources and the personal wealth of its owner, Arvid Moe, to protect Steiger's financial interests. Steiger's proof indicated that, in 1983, WFE had a debt/equity ratio of about sixteen-to-one and a net worth of about $75,000, and that, in contrast, Moe Motors had a debt/equity ratio of about three-to-one and a net worth of approximately $450,000. Steiger also offered evidence that, unlike Arvid Moe's personal assets, Dan Baker's personal assets had been previously encumbered and were unavailable to meet Steiger's capitalization requirements.

▮▮▮▮ The trial court adhered to its ruling that the evidence was only marginally relevant and not admissible under Rule 403, N.D.R.Ev. Trial courts are better able to sense the dynamics of a particular trial than we can ever be, and we accord them broad discretion in balancing the probative value of evidence against the dangers enumerated in Rule 403, N.D.R.Ev. In this case, the offer of proof established that Moe Motors and WFE were not in a substantially similar financial condition. Because of those different financial conditions, and because Steiger's announced reason for terminating WFE's dealership was its undercapitalization and debt/equity ratio, we believe the evidence was of limited probative value. We cannot conclude that the trial court abused its discretion in determining that the probative value of the evidence was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, undue waste or delay, and · needless presentation of cumulative evidence.

Moreover, although the trial court granted Steiger's motion in limine, the court nevertheless allowed the introduction of evidence that Steiger had compared WFE's sales to its other dealerships when it decid-

ed to terminate WFE's dealership. The court concluded that "a comparison [of sales with other dealers] can be summarized evidence to the jury. It has some relevance to one or more of the reasons, one or more of the motives why Steiger decided some months later to terminate. If the summarization of average comparable dealers includes figures that are erroneous, let that be tested under cross-examination." The court then allowed WFE to introduce an exhibit prepared by Roger Parkhouse, a former Steiger employee, summarizing a comparison of tractor sales for WFE and eleven other Steiger dealers in western North Dakota for 1978 through 1982. However, the court deleted the names of the eleven other Steiger dealers from the exhibit.

■ Thus, contrary to WFE's representation on appeal, the trial court did allow WFE to introduce evidence which favorably compared WFE's tractor sales to those of eleven other unnamed Steiger dealerships in western North Dakota. Those "comparable" tractor sales were more than two years before Steiger terminated WFE's dealership. Given that time frame and the fact that identity of the individual dealerships was not the probative purpose of the exhibit, we are not persuaded that the trial court abused its discretion in deleting the names of the eleven other Steiger dealerships from that exhibit.

The trial court also allowed WFE to introduce evidence about Steiger's contacts with T & E in 1984, and the sequence of events leading up to T & E's acquisition of a Steiger dealership for the Williston area. WFE presented evidence to the jury that, in February 1984, T & E expressed interest in a Steiger dealership in the Williston and Billings areas, and that Steiger's representatives responded that "[w]e feel that we will have in the near future sales and service opportunities in Williston, North Dakota and Billings, Montana trade areas." WFE introduced evidence that, in May 1984, T & E obtained a Steiger dealership for the Billings area, and that Steiger advised T & E that a dealership for the Willi-ston area was not available "at that time." WFE also presented evidence that, at the same time, Steiger imposed a payment deadline on WFE for two tractors and also suspended WFE's recently approved line of credit. WFE also introduced evidence that, in June 1984, Steiger imposed a quota on WFE of four new tractor sales by the end of 1984 and required WFE to recapitalize in line with industry standards by July 31, 1984. The jury knew that on August 8, 1984, Steiger informed WFE that, effective October 29, 1984, the dealership was terminated, that on October 29, 1984, Steiger informed T & E that a dealership in the Williston area was available, and that on November 14, 1984, T & E signed a dealership agreement with Steiger for the Williston area.

■ The court thus allowed WFE to introduce and develop evidence about Steiger's negotiations with T & E in 1984 and the sequence of events leading up to T & E's acquisition of a Steiger dealership for the Williston area. We are not persuaded that WFE was required to try its case in a vacuum, devoid of any evidence to establish that Steiger's decision to terminate WFE's non-exclusive dealership was without good cause and was in bad faith. WFE has not demonstrated that its substantial rights were affected by the exclusion of evidence about other dealerships. *See* Rule 103, N.D.R.Ev.

WFE also contends that the trial court abused its discretion in allowing Steiger to introduce an October 1991 report prepared by its expert economist, Dr. Cole Gustafson, because Steiger had not provided that report to WFE before trial.

The court entered a pretrial order requiring that "[a]ny additional exhibits intended to be offered shall be shown ... to opposing counsel prior to trial commencement. Failure to comply, but for good cause shown, may result in ruling to exclude exhibit." Prior to the October 1991 trial, Steiger provided WFE with charts, economic tables, and a "preliminary" economic-damage analysis prepared by Dr. Gustafson in September 1991. After WFE's expert economist, Dr. Myles Watts, testified

at trial and was excused, Steiger called Dr. Gustafson and offered a "modified" report prepared by Dr. Gustafson during the course of the trial. WFE objected to Dr. Gustafson's October report, asserting that its introduction constituted unfair surprise and was contrary to the court's pretrial order. Steiger responded that although the October report contained about sixteen pages of new and revised graphs, the actual opinion of Dr. Gustafson contained only minor changes. The trial court allowed the October report to be admitted into evidence, stating that any discrepancies could be developed during cross-examination.

 We reject WFE's assertion that admission of the October report constituted unfair surprise and requires a new trial. Although the October report included some new graphs, the actual conclusions and opinion reached by Dr. Gustafson in the later report were not substantively different than his conclusions and opinion in the earlier report. WFE did not request a continuance. We have held that the proper remedy for a claim of unfair surprise is a continuance. *State v. Gross*, 351 N.W.2d 428 (N.D.1984); *see Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473 (N.D.1986). *See also* Explanatory Note to Rule 403, N.D.R.Ev. We agree with the trial court that any differences in the underlying data for Dr. Gustafson's conclusions and opinion could have been developed during cross-examination, and we conclude the trial court did not abuse its discretion in allowing the October report to be admitted into evidence.

The judgment and order denying WFE's post-trial motions are affirmed.[4]

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.

---

**4.** WFE also argues that the trial court abused its discretion in denying WFE's motion to substitute Tenneco as the defendant for Steiger and later denying WFE's motion to add Tenneco and its subsidiaries as additional defendants under the terms of the guaranty agreement executed during the bankruptcy. *See* fn. 1. WFE's argument concerns issues about the ultimate responsibility for any damages incurred because of the termination of the dealership. Because we have sustained the judgment on the issue of liability, we do not consider these arguments.