**Dale CEARTIN, Plaintiff and Appellant,**

v.

**Thomas OCHS and Koch Industries, Defendants and Appellees.**

Civ. No. 930173.

Supreme Court of North Dakota.

May 19, 1994.

Nodland & Dickson, Bismarck, for plaintiff and appellant; argued by Irvin B. Nodland.

Smith Bakke & Hovland, Bismarck, for defendants and appellees; argued by Randall J. Bakke.

LEVINE, Justice.

Dale Ceartin appeals from a 1991 district court order setting aside a jury verdict in his favor against Thomas Ochs and granting a new trial, a 1992 judgment dismissing his action against Ochs and Koch Industries, and a 1993 order denying his motion for a new trial.[1] We affirm.

In an earlier appeal from the 1991 order, we briefly stated the underlying facts:

"Dale Ceartin was injured in a two-car accident. Thomas Ochs, the driver of the second vehicle, was employed by Koch Industries and driving its vehicle. Ceartin sued Ochs and Koch Industries. The case was tried before a nine-person jury. During the trial, the motor vehicle crash report which referred to Koch's insurance carrier was inadvertently introduced as an exhibit. During closing arguments, counsel for Ceartin remarked that Ochs would not be held personally responsible for damages.

"The jury awarded Ceartin $124,021.22, but found him thirty-five percent negligent. Forty-six thousand dollars of the total award was for future economic damages. Koch Industries and Ochs moved for a new trial, claiming they were prejudiced by the explicit and implicit references to insurance. In the alternative, they moved to reduce the $46,000, arguing that there was insufficient evidence to justify that amount. Because of the perceived adverse impact of the introduction of the insurance information and the remarks of Ceartin's counsel during closing arguments, the trial court set aside the jury verdict and ordered a new trial or, in the alternative, remittitur of $46,000. Ceartin appealed from that order."

*Ceartin v. Ochs*, 479 N.W.2d 863, 864 (N.D. 1992). We held that an order granting a new trial is not appealable without a certification under Rule 54(b), N.D.R.Civ.P., and dismissed the appeal.[2]

The second trial resulted in a defense verdict, the jury finding that .the evidence did not establish that negligence on the part of Ochs proximately caused the accident and injury to Ceartin. Judgment was entered dismissing Ceartin's action against Ochs and Koch Industries, followed by an order denying Ceartin's motion for a new trial. Ceartin appealed.

Ceartin contends that he was deprived of his right to a fair trial when the trial court set aside the first jury verdict and ordered a new trial. "Granting a new trial is within the sound discretion of the trial court and will not be reversed on appeal unless there has been a manifest abuse of discretion." *Lange v. Cusey*, 379 N.W.2d 775, 777 (N.D.1985). Because denying a motion for new trial brings the case to a conclusion, whereas granting a new trial "merely results in the trial of the case to another jury," we require a stronger showing of an abuse of discretion in granting the motion for a new trial, than we require for denying a motion for new trial. *Okken v. Okken*, 325 N.W.2d 264, 269 (N.D.1982). Thus, "an order granting a new trial is subject to more limited appellate review than an order denying a new trial." *Ceartin v. Ochs, supra*, 479 N.W.2d at 865. An appellate court is rarely justified in preventing a new trial, *Lange v. Cusey, supra*, and orders granting new trials are rarely reversed, *Ceartin v. Ochs, supra*.

---

1. While the 1991 order setting aside the first jury verdict and granting a new trial is not appealable, it is reviewable upon the appeal from the judgment. Rule 35, N.D.R.App.P.

2. Ceartin has requested that we abandon our holding in *Ceartin v. Ochs*, 479 N.W.2d 863 (N.D. 1992). Rule 54(b), N.D.R.Civ.P., and our appealability jurisprudence are designed to deter piecemeal appeals. We decline to revisit our ruling in *Ceartin v. Ochs, supra*.

■ The trial court granted a new trial for three interrelated reasons: (1) disclosure to the jury that the defendants had liability insurance; (2) a remark by Ceartin's counsel in closing argument that Ochs would not be held personally responsible for damages; and (3) the jury's award of future economic damages, which had not been claimed or proved. The trial court explained:

"Several issues are raised by the defendants, two of which, I believe, could very well be interrelated. Those are the issues of the jurors being aware of the existence of liability insurance and of their awarding significant future economic damages, although none had been claimed.

"The insurance came to the attention of the jury initially in an innocent way. A law enforcement officer's report of the accident was allowed in evidence over the objection of the defendant. The idea was to allow in evidence the reverse of the report, which contained a drawing of the accident scene but not the front, which contained a reference to the fact that the driver of the vehicle was insured by his employer. Both sides, however, were given to the jury.

"During closing argument counsel for the plaintiff remarked that Mr. Ochs would not be held personally responsible, which, under normal circumstances, could itself be construed as a reference to the existence of liability insurance, and in this case was confirmed by the unintentional admission of the exhibit.

\*     \*     \*     \*     \*     \*

"As noted, the plaintiff's counsel made it plain to the jury during the trial that there was no loss of future income involved, and the evidence demonstrated that. The jury's verdict, therefore, though in other respects supported by the evidence, was not so supported in this instance and was contrary to the evidence. One suspects, therefore, that the first error may have contributed to the second.

"It is settled precedent in this case that awareness by the jury of the existence of liability insurance on behalf of a defendant is prejudicial to a defendant, regardless of the manner in which this comes to the attention of the jury."

Seizing on the last quoted sentence of the trial court's explanation for granting a new trial, counsel for Ceartin, in his appellate brief, launched a vigorous argument against the notion that the mere mention of liability insurance in a jury trial automatically requires a new trial. Arguing that the trial court misinterpreted settled precedent, in particular, *Neibauer v. Well*, 319 N.W.2d 143 (N.D.1982), Ceartin urges us to overrule past decisions because they are:

"(1)  archaic and out of touch with the vast majority of case law in the United States;

"(2)  grounded in an irrational and naive belief jurors will not think about liability insurance in a state that requires each of them to carry it;

"(3)  in defiance of the severe criticism past North Dakota decisions have received from the most noted legal scholars writing on the subject; and

"(4)  without any support in the research that it achieves even its own stated purpose of preventing deep pocket prejudice against insurance companies."

As for *Neibauer v. Well*, Ceartin has little regard:

"In granting a new trial in this case, the trial court was obviously relying upon *Neibauer v. Well*, 319 N.W.2d 143 (N.D.1982), which appears to hold that any inadvertent mention of 'insurance' before the jury vitiates the verdict. Such a position is indefensible. All nine of the jurors here were licensed drivers."

■ Ceartin's argument distorts both the trial court's rationale for granting a new trial and this court's decision in *Neibauer v. Well,* *supra.* The trial court's explanation for granting a new trial makes it clear it did not grant a new trial because it understood the law in North Dakota to be that the mention of liability insurance in a jury trial automatically required a mistrial or a new trial, but for the reasons it carefully expressed.

The trial court applied the law carefully and thoughtfully. Our cases do not require

automatic reversal upon every mention of insurance, although ordinarily, it is improper and prejudicial to disclose to the jury that a party is or is not insured. *Priel v. R.E.D., Inc.,* 392 N.W.2d 65, 67 (N.D.1986). In *Priel,* we held that defense counsel's closing argument statement that his client would have to pay a judgment out of his own pocket, thereby implying that his client had no insurance in an attempt to induce the jury to return a favorable verdict for that reason, was an improper argument requiring reversal and a new trial. Rule 411, N.D.R.Ev., bars evidence that a person was or was not insured against liability to prove negligence or other wrongful act. *Neibauer v. Well, supra.* A mere reference to insurance, however, does not automatically require a mistrial or a new trial. An "inadvertent, unexpected, and vague" reference to insurance by a witness ordinarily is an exception to the rule prohibiting references to insurance in jury trials. *Andersen v. Teamsters Local 116 Building Club, Inc.,* 347 N.W.2d 309, 315 (N.D.1984). *See also Smith v. Anderson,* 451 N.W.2d 108, 111 (N.D.1990), in which a non-party witness's reference to insurance was held not to be reversible error where "the reference to insurance did not imply that either party to the lawsuit did or did not have liability insurance." In some cases, reference to insurance is relevant and admissible. Rule 411, N.D.R.Ev., while excluding evidence of liability insurance on the issue of negligence or other wrongful act, provides that evidence of liability insurance need not be excluded "if offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." In *Filloon v. Stenseth,* 498 N.W.2d 353 (N.D.1993), we held that the trial court erred in failing to acknowledge that evidence of a witness's employment as an insurance adjuster by the defendants' insurance carrier fit into one of the exceptions under Rule 411, N.D.R.Ev., and in failing to recognize its potential admissibility under Rule 411.

Even *Neibauer v. Well, supra,* did not "hold that any inadvertent mention of 'insurance' before the jury vitiates the verdict," as Ceartin asserts. In that case, we merely upheld the trial court's grant of a new trial, where the plaintiff brought up the subject of insurance while testifying on direct examination by her attorney, and the jury awarded damages for "considerably more" than were justified by the evidence, which led the trial court to conclude " 'that the evidence of insurance was, in fact, prejudicial to defendant requiring the granting of a new trial.' " *Id.,* at 144. Much the same situation is present in this case. Liability insurance was disclosed and argued to the jury, the jury awarded future economic damages which had not been claimed and which were not supported by the evidence, and the trial court concluded that the erroneous disclosure and argument of liability insurance may have contributed to the jury's award of damages neither claimed nor supported by the evidence.

Even if we were inclined to fashion a less drastic response to improper disclosure of liability insurance in jury trials than a mistrial or a new trial, we would not do so in this case. This is not a case like *Andersen v. Teamsters Local 116 Building Club, Inc., supra,* where there was an "inadvertent, unexpected, and vague" reference to insurance by a witness, which, ordinarily, is an exception to the rule prohibiting references to insurance in jury trials. Here, the reference to insurance was in an exhibit introduced in evidence and thereby disclosed to the jury through counsel. When evidence of liability insurance is placed before the jury by counsel, who are officers of the court, it is even more likely than in other cases that "[a]dmitting into evidence the fact that the defendant is protected by liability insurance may cause jury members to wrongfully infer that such a matter is a permissible factor to consider in reaching a verdict." *Neibauer v. Well, supra,* 319 N.W.2d at 145. While counsel for the parties blame each other for the problem, there is blame enough for counsel to share. The attorneys for both sides had a duty to make sure that improper references to insurance were not disclosed to the jury in exhibits admitted in evidence. *See Sayih v. Perlmutter,* 561 So.2d 309, 311 (Fla.App.1990) (Attorneys for both sides "had the same duty to insure that no extraneous materials were submitted to the jury."); *Minnesota v. Nichols,* 29 Minn. 357, 13 N.W. 153, 154 (1882) ("[I]t was incumbent upon" an attorney with

knowledge that papers were delivered to the jury "to see that papers not proper to go to the jury should be withheld.").

In arguing that the disclosure of insurance in a jury trial should not require a mistrial or a new trial, Ceartin said that "it is *liability insurance* not just *insurance* to which the archaic rule applies." Ceartin argues that there must be evidence of liability insurance. The trial court knew that the insurance referred to in the crash report was "*liability insurance* not just *insurance*," and there is no reason to think that the members of the jury had any difficulty in discerning as much.

Another of the reasons stated by the trial court for ordering a new trial was a closing argument remark by Ceartin's counsel that Ochs would not be held personally liable. As the trial court said in granting a new trial, that remark "could itself be construed as a reference to the existence of liability insurance, and in this case was confirmed by the unintentional admission of the exhibit" containing the reference to insurance. Ceartin argues that the remark "was made in the context of discussing the law of agency with the jury." But the remark was not a correct statement of agency law.[3] Whether an incorrect statement of agency law or a reference to liability insurance, as the trial court deemed it, the remark was improper and was one of the reasons underlying the trial court's conclusion that the defendants may not have received a fair trial.

A third area of concern for the trial court was the jury's award of $46,000 to Ceartin for future economic damages, although none had been claimed and none were supported by the evidence.[4] Because future economic damages were neither claimed nor supported by the evidence, the trial court reasoned that "the first error" (the disclosure of insurance in an exhibit admitted in evidence) "may have contributed to the second" (the award of damages neither claimed nor supported by the evidence).

■ Evidence that a person had or did not have liability insurance is inadmissible to prove negligence or other wrongful act. Admitting evidence of insurance may cause jurors to infer that insurance is a proper factor for consideration. Here, the attorneys for the parties allowed the jury to receive a report that disclosed that the defendants had liability insurance; Ceartin's counsel made a remark in closing argument that could be, and was, considered by the trial court as a reference to the existence of liability insurance; and the jury awarded future economic damages not claimed or supported by the evidence. Those irregularities[5] may have prevented the defendants from having a fair trial, justifying the granting of a new trial under Rule 59(b)(1), N.D.R.Civ.P. In short, the disclosure that the defendants had liability insurance "may have influenced the jury's judgment in arriving at a verdict." *Neibauer v. Well, supra,* 319 N.W.2d at 145.

Perhaps no single irregularity would have caused much concern. Cumulatively, however, they led the trial court to believe that the defendants may have been deprived of a fair trial. The trial court was in a much better position than this court to determine if there was a fair trial. " '[T]rial judges are much closer to the pulse of a trial than we can ever

---

3. Section 3–03–09, N.D.C.C., provides that "a principal is responsible to third persons for the negligence of the principal's agent in the transaction of the business of the agency, including wrongful acts committed by the agent in and as a part of the transaction of the business." However, § 3–04–02, N.D.C.C., provides that an agent is also responsible for his wrongful acts: "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency.... When his acts are wrongful in their nature." Although a principal may be liable for injuries to a third person caused by the negligence of the principal's agent, the agent is also liable for injuries to a third person caused by the agent's negligence. *Wills v. Schroeder Aviation, Inc.,* 390 N.W.2d 544 (N.D.

1986); *Schlosser v. Great Northern Ry. Co.,* 20 N.D. 406, 127 N.W. 502 (1910).

4. In his brief on appeal, Ceartin asserted: "Presumably, the jury took the past medical expenses of approximately $1,000 per year and awarded Ceartin $46,000 based upon his estimated life expectancy." There was, however, no evidence that Ceartin would incur any future medical expenses.

5. An "irregularity" is a "nonconformance to a rule or a law, or failure to follow requirements of the law." *Lange v. Cusey,* 379 N.W.2d 775, 777 (N.D.1985).

be' and 'are better able to sense the dynamics of a trial than we can ever be'." (Citations omitted.) *Fisher v. Johnson*, 508 N.W.2d 352, 356 (N.D.1993). *See also Williston Farm Equipment, Inc. v. Steiger Tractor, Inc.*, 504 N.W.2d 545 (N.D.1993). In light of the irregularities that occurred in the first trial, we conclude that the trial court did not abuse its discretion in setting aside the first jury verdict and granting the defendants' motion for a new trial.

Ceartin contends that the trial court erred in failing to give a jury instruction placing the burden upon Ochs and Koch if they wished to establish a right to have Ceartin's damages reduced because of a pre-existing condition. We need not address this issue because the jury found that there was no negligence by Ochs which proximately caused the accident and injury to Ceartin, and did not reach the issue of damages at all. *See Maurer v. Wagner*, 509 N.W.2d 258 (N.D.1993) (Error, if any, in an instruction was harmless where the jury found no negligence.). "Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services, Inc. v. Brooks*, 229 N.W.2d 69, 71 (N.D.1975).

■ Ceartin contends that the trial court erred in denying his motion for a new trial after the second jury trial because two defense witnesses committed perjury. Assuming, *arguendo*, that the witnesses did commit perjury, denial of Ceartin's motion for a new trial was not erroneous. The testimony about which Ceartin complains dealt with the extent of Ceartin's injuries or damages, rather than with responsibility for the collision. Because the jury found that there was no negligence by the defendants, it did not reach the issue of damages and the extent of Ceartin's injuries and damages is irrelevant.

In its order granting a new trial after the first jury trial, the trial court ruled:

"In the event this decision granting a new trial is vacated or reversed, it is my order that a new trial be granted unless the plaintiff consents to a reduction of damages by the amount of future economic damages awarded by the jury, *i.e.*, $46,-000."

Ceartin contends that the trial court erred in ordering a remittitur if this court should reverse the order granting a new trial. Because we have affirmed the trial court's order granting a new trial after the first jury trial, we need not address this issue. *Hospital Services, Inc. v. Brooks, supra.*

The order setting aside the first jury verdict and granting a new trial, the judgment of dismissal entered after the second jury trial, and the order denying Ceartin's motion for a new trial are affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.